BRINK AND OTHERS *against* RICHTMYER.

THIS was an action of trespass, which was tried at the *Ulster* circuit, for breaking and entering the close of the plaintiffs, covered with water, usually called the *Green Flats,* and fishing therein.

Where *an island* commonly called *and known by the name of the Green Flats,* was granted by patent, the grant was held good, although the

*Green Flats* were usually covered with water, and, therefore, not strictly an island, there being no other land answering the description.
And this is a grant, not of the right of fishery, but of the land ; subject, however, to be used as a common highway and public fishery until otherwise appropriated by the private owner ; and it seems that an action will not lie for taking fish thereon
But the public fishery does not give fishermen the right of drawing nets upon the flat.
A grant of *the exclusive privilege of fishing with nets on the Green Flats* for ten years, is not a lease of the fishery, but of the right of drawing nets upon the flats, such being the purpose for which they had been used, and this being in the power of the lessor to grant : but the fishery on the flats still continues common.

The plaintiffs were the lessees of *Alexander Cockburn,* who derived his title under a patent, dated the 5th of *January,* 1768, to *Hugh Patrick,* of " All those eight certain islands, and two flats of land, lying and being in *Hudson* river, &c. ;" and the premises in question are thus described : " one other island directly opposite the mouth of the said *Saugerties* creek, commonly called and known by the name of the *Green Flats,* containing forty acres." *Alexander Cockburn,* by lease dated 4th of *May,* 1815, leased to the plaintiffs, " the exclusive privilege of fishing with their nets on the westerly side of the *Green Flatts* in *Hudson's* river, beginning at the southernmost station of the *Ariantie,* and extending southerly down the westerly side of the said flats ten chains, eighty links, for the term of ten years next ensuing the date." It was proved that the *Green Flats* were usually covered with water, and were used for the purpose of drawing nets from the channel of the river. The trespasses alleged in the declaration were proved, and a verdict was found for the plaintiffs for 200 dollars damages, subject to the opinion of the court, on a case containing the facts above stated.

*Tappen,* for the plaintiffs.　1. This patent would be valid, even if it had been a grant of a *free* fishery, or an exclusive right of fishing in that part of *Hudson's* river; though it is supposed that the power of the *crown* was restrained, in this respect, by *magna charta* ; and *Blackstone*\* has made some nice distinctions as to the different rights of fishery, in order to remove the difficulties which had embarrassed the subject in the minds of many writers.† An exclusive right of fishing on the sea-shore, or, in a public river, may exist in an individual.‡ The exclusive right of the owner of the land adjacent to a public river, to fish on the bank, is not against *magna charta,* and is well known and recognised in several public treaties.

Again ; the premises might be granted as land under water.§ Possession, also, has accompanied the title of the plaintiffs. They have held the *Green Flats,* or *locus in quo,* for above 10 years. They have not lost their rights by any nonuser; and no adverse possession can be set up against them.

The patent includes the premises, or *locus in quo.* It conveys an island called the *Green Flats,* and it may be called an island or flat. It is covered with water, but the herbage, or tall grass, is always visible, and has given to it the name of the

\* 2 *Bl. Comm.*
39.

† *Selwyn. N. P.*
983. 984. (*Piscary* )
‡ *Bagott* v *Orr,*
2 *Bos. & Pull.*
472.

§ 10 *Johns. Rep.*
456: 495.

*Green Flats.* There is no other place which answers to the description, or which is susceptible of location under the patent, but the premises in question. Though it should contain more than 40 acres; yet, as the quantity is matter of description only,* it does not prevent its location under the patent. Besides, the flat must necessarily become enlarged, in the lapse of time, by gradual alluvion. It is subject to irregular inundations; and there can be no question as to tide marks. The public have no right of using it for the purpose of fishing.

*Sudam,* contra. By the words of the patent, nothing could pass under it but an *island.* To answer this description, there must be land uncovered at high water. A patent does not extend beyond highwater mark. Here is a flat always covered with water, except at one small spot which is dry at highwater. One of the conditions annexed to the grant in this patent is, that a certain portion of the land should be improved. Now, this flat is incapable of cultivation, or, of that agricultural improvement contemplated by the patent. It is clear, then, that no part of it can be within the patent, except the spot uncovered by water.

But we contend that the right of fishing, exercised by the defendant in this case, is a common law right, and cannot, since *magna charta,* be taken away. Though *Blackstone*† says, that in all countries where the fœdal polity prevailed a free fishery, or exclusive right of fishing in a public river, is a royal franchise; yet he admits, that since *magna charta,* confirmed and extended by the charters of *Henry* III., the granting of such a franchise is expressly prohibited; and that a prescription for such a right must go back as far as *Henry* II.

The case of *Bagott* v. *Orr* is in favour of the defendant. It is there admitted, that every subject, *prima facie,* has a right to take fish in an arm of the sea, or public river, where the tide ebbs and flows. The doctrine was laid down by Lord *Holt,* in express and strong terms, in Lord *Fitzwalter's* case;‡ and, afterwards, in *Waren* v. *Matthews,*§ he says, " the subject has a right to fish in all navigable rivers, as he has a right to fish in the sea." These cases are recognised as clear law by *Willes,* Ch. J., in *Ward* v. *Creswell,*‖ and he says there can be no prescription for such a right, as appurtenant to certain tenements; that a man might as well prescribe for a right to travel on the

ALBANY,
August, 1817.

BRINK
v.
REGHTMYER.

* 2 Johns. Rep.
37.

† 2 Bl. Com.
39, 40.

‡ 1 Mod. 105

§ 1 Salk. 357.
6 Mod. 73. S. C.

‖ Willes' Rep.
265.

ALBANY,
August, 1817.

BRINK
v.
REGHTMYER.
* Grot. de J. B.
et P. b. 2. c. 3.
s. 9. Bract. l. 1.
c. 12. s 6.
16 Vin. Abr.
Piscary, (B.)
† 4 Burr. Rep.
2162.
‡ 2 H. Bl. Rep.
182. 4 Term
Rep 437. Ro-
gers v. Allen,
1 Campb. N. P.
Rep. 309.

king's highway. That such is not merely the law of *England*, but the law of nations.* In *Carter* v. *Murcot*,† it was also held, that in arms of the sea and navigable rivers, the fishery is common, being, *prima facie*, in the king and *public*, though it was admitted that a person might prescribe for an exclusive. right of fishing in an arm of the sea or navigable river, but he must *prove* the right.‡ The same rules are applicable to sand bars and flats in navigable rivers ; and whenever goverment grants such places, the common land right of going on them for the purpose of fishing remains, and cannot be taken away.

*Tallmadge*, in reply, said, that it was competent in the crown, or government, to grant the *locus in quo*, by the name of the *Green Flats*, whether covered at high water or not ; and there could be no doubt that the premises were intended ; for there was no other place answering to the description. That the objections raised on the other side might be proper if it was a question solely as to the right of fishing, but they can have no force in an action for entering the close of the plaintiffs, or infringing their right under the patent.

THOMPSON, Ch. J., delivered the opinion of the court. This is an action of trespass for breaking and entering the plaintiff's close, called the *Green Flats*, and fishing thereon. A title to the *locus in quo* is made under a patent to *Hugh Patrick*, bearing date the 5th day of *January*, in the year 1768, by which eight islands and two flats of land, lying and being in *Hudson's* river, are granted to the patentee. The *locus in quo* is claimed as an island, which is described, in the patent, as follows : " One other island, directly opposite the mouth of the said *Saugerties* creek, commonly called and known by the name of the *Green Flats*, containing forty acres." From the testimony it appears that the land claimed under this patent is usually covered with water, and could not, therefore, in strictness, be called an island. There does not, however, appear to be any island, or other land, in any way answering the description in the grant ; and as it is called a flat, as well as an island, it may be considered as sufficiently descriptive, and as coming within the patent. There can be no doubt but this was the land intended to be granted. There are no words in the patent showing an intention in the government to grant any fishery. It would, therefore, seem to be a reasonable interpretation of this grant,

to consider it an ordinary grant of land for agricultural or other purposes to which land is usually applied; subject, however, to be used as a common highway and public fishery, until otherwise appropriated by the private owner.

In Lord *Fitzwalter's* case, (1 *Mod.* 105.,) *Hale*, Ch. J., says, " a river which flows and reflows is, *prima facie*, common to all ; and if any one will appropriate a privilege to himself, the proof lieth on his side ; and there is no contradiction, in the soil being in one, and the right of fishing in the river common to all fishermen." If the injury complained of, in this case, was the taking fish in the waters covering this flat, or island, I should very strongly incline to think the action was not sustainable. The case is not very explicit on the subject, but it is very fairly to be collected from it, that this flat is only used for the purpose of drawing the nets from the channel of the river ; if so, it is not the fishery that is claimed under the patent; that still remains common. And, although the want of the convenience of drawing nets upon this flat may virtually exclude others from the fishery, yet this will not give a right to use the flat, or island, adjoining the fishery, any more than it would the shore when the convenience of fishermen might require it.

Although the lease from *Cockburn* to the plaintiffs purports to grant the exclusive privilege of fishing with their nets on the westerly side of the *Green flats*, within certain bounds therein mentioned, we are not to construe this as a lease of the fishery, but only of a certain part of the island, or flat, for the convenience of drawing nets ; and thus far it was within the right and power of *Cockburn* to grant. In this point of view, the case comes within the rules and principles which governed the court in the case of *Jacobson* v. *Fountain*, (2 *Johns. Rep.* 176.) The right being established in the plaintiffs, and those under whom they claim, to the *flat*, or, *island*, the trespass and measure of damages are not controverted. The plaintiff must, therefore, have judgment upon the verdict, as found by the jury.

Judgment for the plaintiffs.