HENRY S. DERMOTT, as Executor, etc., et al., Appellants. *v.* THE STATE OF NEW YORK, Respondent.

A claim against the State was based upon the alleged infringement of rights acquired by grant from the State, executed by the canal commissioners under acts of 1822 and 1827. (Chap. 270, Laws of 1822 ; and chap. 100, Laws of 1827.) The act first mentioned recited in substance that said commissioners, by operations determined on for improvement of the navigation of the Hudson river, would destroy and render useless a mill-site and dam described therein, and in compensation for such loss the commissioners were authorized to grant to the owners the privilege of drawing a specified quantity of water from the Erie canal, provided " that it shall be lawful for the canal commissioners, or a majority of them, from time to time to modify or in whole to revoke any grant made in pursuance

of the act as to them may seem necessary and proper for the preservation of the navigation of said canal." The owners, in 1828, erected valuable mills run by water taken from the canal in pursuance of said grant, and they and their grantees continued to use the water until 1875, when claimant, who had succeeded to the right, was deprived thereof in pursuance of a resolution of the canal commissioners, adopted in that year, which recited that the water so drawn was required " to protect and preserve the navigation of the canal," and thereupon resolved that said grant be " rescinded, revoked, annulled and entirely abrogated." The board of claims, on motion of the attorney-general, dismissed the claimant's petition on the ground that "the facts stated in the claim, and exhibits under the laws of this State, do not constitute any claim against the State." *Held* no error; that while the grant in question was based upon a good consideration, *i. e.,* as a compensation for property appropriated by the State, and assuming the legislature had power to make the contract, the right granted was a limited one, and liable to be defeated by the happening of the contingency specified, which had happened; that the right of revocation had been duly exercised and all rights under the grant destroyed.

It was averred in the petition upon which the claim was made, that the Mohawk river, upon which the original mill-privilege was located, was not navigable for any purpose; that the tide never flowed in that portion of it. *Held,* that the motion to dismiss was in the nature of a demurrer, and for all the purposes of the proceedings impliedly admitted the truth of the averments in the petition; but that even if the stream was navigable it did not preclude the lawful acquisition of a mill-site and dam thereon; that it was competent for the State to grant and for individuals to acquire the right to erect a dam and to possess it as individual property; that the act, therefore, was not a mere voluntary exercise of the bounty of the State, but was within the legislative power and the grant was based on a good consideration.

It was also alleged in the petition that subsequently to the making of the grant, the capacity of said canal had been greatly enlarged without the consent of the owner of the grant, and that the necesssity for the appropriation for canal purposes of the water granted arose from the enlargement, which rendered an increased quantity necessary. It was urged by the claimant that the terms of the contract had reference to and were to be construed in view of the conditions of canal navigation at the time of the grant, and that neither party could change any of these conditions to the prejudice of the other without consent of the latter. *Held* untenable; that the parties contracted with reference to the necessities of navigation only, and whenever for any reason the necessity arose, the property by the terms of the contract was to revert to the State.

While the rule requiring a strict construction, as against the grantee, of a grant from the State does not apply in all of its severity, and in all cases where the grant is for a good consideration, it may not be relaxed when

the grant relates to rights which the State holds in trust for the public use, such as the supervision of public hi    ways and the control of navigable waters.

(Argued March 27, 1885 ; decided April 14, 1885.)

APPEAL from decision of the board of claims, made November 14, 1883, dismissing the claim herein and awarding nothing thereon.

The nature of the claim and the material facts are stated in the opinion.

*Martin I. Townsend* for appellants. The grant to plaintiff's testator having been made for a good consideration, the State could not revoke or obtain possession of the privilege granted except by condemnation and compensation. (12 Wend. 381; 4 Denio, 189; 3 Hill, 504; 8 Barb. 653; 35 id. 282; 2 Penn. 531.)

*D. O'Brien,* attorney-general, for respondent. The proprietorship of the banks and bed of the Hudson and Mohawk rivers is vested in the State, and riparian owners along these streams are not entitled to damages for any diversion or use of their waters by the State. (*Smith* v. *City of Rochester,* 92 N. Y. 463; *People* v. *Canal Appraisers,* 33 id. 461; *Fort Plain Bridge Company* v. *Smith,* 30 id. 44; *People* v. *Thibbitts,* 19 id. 523; *Gould* v. *H. R. R. R. Co.,* 6 id. 522; *Canal Appraisers* v. *People,* 17 Wend. 572.) The claim of McIntyre & McDonald, for compensation for any legal injuries sustained by the destruction of their dam across the Mohawk, was barred by the expiration of one year from the adoption of the Revised Statutes in 1828. (1 R. S. [7th ed.] 642, § 49; *Marks* v. *State,* MS. opinion, Ct. of App.) Nor is there any implied right reserved to them, nor any implied agreement on the part of the State, that whenever this license should be revoked they or their grantees would be entitled to compensation. The power to revoke being expressly reserved, and being unqualified and unconditional, conclusively rebuts

any such implication or presumption. (*Ex parte Miller*, 2 Hill, 418, 423.) Independently of the explicit provisions of the acts of 1822 and 1827, authorizing the canal commissioners to revoke, at their pleasure, the claimant's rights would be controlled by the general rule that a license to use real property, or an interest therein, may be recalled at the pleasure of the licensor without making restitution or compensation to the licensee for any damage sustained thereby. (*Murdock* v. *P. P. & C. R. R. Co.*, 73 N. Y. 579 ; *Babcock* v. *Utter*, 1 Keyes, 397; *Mumford* v. *Whitney*, 15 Wend. 381; *Miller* v. *A. & S. R. R. Co.*, 6 Hill, 61.) The claimants are also debarred from insisting that they had acquired a vested right to the use of the waters of the canal under the grant from the canal commissioners, pursuant to the acts of 1822 and 1827, because of the existence of the constitutional provision which declares that the legislature shall not sell or otherwise dispose of the Erie canal, but that it shall remain the property of the State and under its management forever. (Const. 1821, art. 7, § 10 ; Const. 1846, art. 7, § 6 ; *Burbank* v. *Fay*, 5 Lans. 397.) The board of claims had no jurisdiction to make an award in claimant's favor. (1 R. S. [7th ed.] 624 ; *Marks* v. *State*, MS. opinion ; *St. Peter* v. *Dennison*, 58 N. Y. 416.)

Ruger, Ch. J. The claimants in this proceeding assert a right to damages against the State by reason of the act of the canal commissioners in cutting off the privilege of drawing surplus water from the Erie canal for the propulsion of the machinery used in running certain flouring mills owned by them near Port Schuyler. The resolution of the commissioners by which the use of the water was withdrawn from the claimants was adopted in 1875 and reads as follows: "Whereas, It is evident to the board that water drawn from said canal at Port Schuyler by Stephen C. Dermott under his water grant is required by the State for canal purposes in order to protect and preserve the navigation of the said canal ; " be it, therefore, *Resolved*, That said grant be hereby " rescinded, revoked, annulled and entirely abrogated." The claim of the appellants

is based upon the rights acquired by them under the provisions of chapters 270, Laws of 1822, and 100, Laws of 1827, which, so far as the material portions are concerned, read as follows : " Whereas it appears that the legal representatives of John McDonald, deceased, and Archibald McIntyre are the owners of a mill-site and dam at the junction of the most northerly mouth or spout of the Mohawk with the Hudson river ; and, whereas, it appears that the canal commissioners by operations determined on for the improvement of the navigation of said river will destroy and render entirely useless the said mill-site and dam ; " " and, whereas, it appears to the legislature that in equity relief ought to be granted therefor, Be it enacted by the people of the State of New York, represented in Senate and Assembly, that for compensating " the parties aforesaid " " for the loss of said mill-site and water belonging thereto the canal commissioners are hereby authorized to grant and convey " to the parties aforesaid " the right of drawing water from the canal at any point between the Mohawk river and the city of Albany," " such a column of water as shall be deemed sufficient to propel four run of mill-stone for grinding flour ; " provided, however, that the right to draw water from the canal hereby granted shall in nowise operate to prevent or injure the navigation of the boats therein ; and provided further, that it shall be lawful for the canal commissioners, or a majority of them, from time to time to modify or in whole revoke any grant made in pursuance of this act, as to them may seem necessary and proper for the preservation of the navigation of the said canal." The act of 1827, chapter 100, confirmed the power given by the previous act, with some immaterial changes, and the claimants show they have succeeded to all of the rights conferred upon the original grantees under said acts. The case shows that the claimants' grantors, under the authority given by said acts, erected valuable mills at Port Schuyler in 1828, and continued to use and enjoy them, either by themselves or their grantees, by water power derived from the surplus water of the canal from that time to the year 1875, when they were

deprived of its use by the resolution of the canal commissioners hereinbefore referred to.

The petition of the claimants was originally filed with the board of canal appraisers in 1875, and was pending before that body until 1883, when by force of the statute organizing the board of claims it was transferred to them for adjudication. At a hearing of the matter in November, 1883, the board of claims, upon the motion of the attorney-general, dismissed the claimants' petition upon the ground that "the facts stated in the claim and exhibits under the laws of this State do not constitute any claim against the State." The appeal to this court is taken from that determination.

The motion to dismiss the claimants' petition was in the nature of a demurrer to the cause of action stated, and impliedly admitted for the purposes of this proceeding the truth of the allegations contained therein.

It was alleged in the petition that the tide never flowed in that portion of the Mohawk river upon which the dam and mill-site referred to in the act of 1822 was situated, and that it was not navigable for any purpose at the time of said appropriation. It was further stated therein that subsequent to the time of making the grant the capacity of the Erie canal had been greatly enlarged without the consent of the owners of the grant by virtue of certain acts of the legislature authorizing the same, and that the necessity for the appropriation of the water made by the canal commissioners in 1875 arose from the increased quantity required for the navigation of the enlarged canal.

For the purposes of this discussion these allegations must be taken as true and the case disposed of upon that assumption. It also appears from the recitals contained in the original act of 1822 that the grant in question was based upon a good consideration and was made to McDonald & McIntyre as a compensation for property belonging to them which had been previously appropriated by the State to its own use.

Although the north spout of the Mohawk might be a navigable stream, that fact alone did not preclude the lawful acqui-

sition by McDonald & McIntyre of a mill-site and dam thereon, or rebut the presumption of ownership arising from the admission of that fact, expressly made by the State in the recitals of the act of 1822. Even if such stream was navigable it was competent for the State to grant and for them to acquire the right to erect a dam thereon, and to possess the same as their individual property. The act in question could not, therefore, be considered as a mere voluntary exercise of the bounty of the State toward the persons named in it, but must be regarded, if within the constitutional power of the legislature to make, as a valid contract between the parties, and subject to the same rules of interpretation which govern the contracts of individuals, except those requiring the grants of the sovereign to be strictly construed against its grantees, and such as necessarily arise from the difference of intention ascribable to parties, whose objects and employment, are so diverse as those of sovereign and subject. (*Colvin* v. *Burnet*, 2 Hill, 620; *Brink* v. *Richtmyer*, 14 Johns. 255; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420.) It is said in *Langdon* v. *Mayor of N. Y.* (93 N. Y. 641), that the rule requiring a strict construction, did not apply in all of its severity to the case of a grant or contract made between the sovereign and a subject upon a good consideration, but this qualification we think must depend, somewhat, upon the nature of the contract. When the subject consists of mere rights of property not related to a public use, or affecting limitations upon the prerogative of the sovereign it may well be that the rules of interpretation which pertain to the construction of contracts between individuals should also govern those between sovereign and subject; but when it relates to what are known as *jus publici*, or the rights which the sovereign holds in trust for the public use, such as the supervision of public highways and the control of navigable waters which are said to be inalienable (*Gould* v. *H. R. R. R. Co.*, 6 N. Y. 546; *Smith* v. *The City of Rochester*, 92 id. 477), no relaxation of the general rule can safely be indulged. Assuming, therefore, the power of the legislature to make the contract, it constituted an obligation which

neither party thereto had the right to withdraw from arbitrarily, or subvert by its mere will and pleasure. The inquiry is, therefore, presented as to the nature and extent of the right acquired by the claimants under the act in question. It is described in the law creating it as being a privilege to draw a sufficient column of water from the canal "to propel four run of mill-stones for grinding flour, and the requisite machinery for flouring with that number of stones," provided, however, that the said right " shall in nowise operate to prevent or injure the navigation of the boats therein; and provided further, that it shall be lawful for the canal commissioners, or a majority of them, from time to time, to modify or in whole revoke any grant made in pursuance of this act as to them may seem necessary and proper for the navigation of the canal."

It will be seen from the terms of the grant that it was a limited estate liable to be defeated by the happening of the contingency provided as a condition subsequent. It is claimed by the State that this contingency has occurred, and the right of revocation or annulment has been duly exercised in accordance with the letter and terms of the act. This effectually destroyed all rights under the grant, unless some express or implied obligation of the contract was violated by its exercise.

It is claimed, however, by the appellants that the terms of the contract were settled and agreed upon by the parties with reference to the conditions of canal navigation as they existed at the time of the grant, and that neither party could in good faith thereafter, without the consent of the other, change any of the conditions upon which the contract was based to the injury or prejudice of the other. We think this contention cannot be sustained. The rule authorizing a presumption of the conveyance of whatever may be essential to the enjoyment of the thing granted, cannot apply where the contract provides by an express stipulation for its annulment or modification at the option of the grantor. The reservation of such a right is entirely lawful and involves no repugnancy between the grant, and the right reserved, as the reservation operates simply as a limitation upon the right of property conveyed.

(*Ex parte Miller*, 2 Hill, 418.) Certainly no express provision is contained in the contract to the effect claimed, and if it is supportable at all it must be from some implication arising out of the situation and acts of the parties, and the circumstances surrounding the property at the time of the grant, which is by the obligation of some principle of justice or equity required to be made. Such a contract the appellants seek to imply in this case. The claim is made that the State by the grant of the water power in question, impliedly contracted not to do any act which should forward or bring about the contingency upon which the duration of the grant was by its terms made to depend.

The law will, sometimes, in the absence of express stipulation on the subject, infer a contract or promise from one party to the other from the nature of the transaction, or the supposed intention of the parties, where the circumstances would seem to authorize the assumption that such an obligation was within the contemplation of the parties when making their contract. It will also imply an obligation where in the course of the performance of a contract, circumstances arise which were not foreseen and provided for by the parties, and no intention with regard thereto can be inferred from the language of their agreement, or the acts of the parties relating thereto. The obligation implied under such circumstances is such as justice would dictate, and must conform to what the court may assume would have been the agreement of the parties, if the situation had been anticipated and provided for. (Addison on Contracts, 22.) Thus whatever obligation is sought to be raised by legal implication, must be of such a character as the court will assume would have been made by the parties if their attention had been called to the subject, and their conduct inspired by principles of justice. The contention of the appellant is, therefore, that this court should assume that the State would have covenanted not to alter or change the location or enlarge the dimensions of the canal, if they had been required to make express provision, on the subject at the time of passing the act in question. In other

words, their contention is that the State would voluntarily have come under the obligation of refraining for all time from any attempt to increase the facilities of inland navigation, under the penalty of being obliged to repurchase the property, which it was then engaged in conveying voluntarily, if they had been invited to do so, no matter how strongly the growth of trade and commerce in the future, should demand increasing facilities for its transportation. While the extent of that increase which has sought its outlet to the markets of the world through the Erie canal, may not have been originally anticipated, yet it cannot be doubted that the public officers concerned in the matter even then, appreciated the imprudence if not folly of assuming obligations, whereby the constitutional power of the State should be restricted, and control over the management of its scheme of internal improvement hampered and embarrassed by restrictive obligations.

The grant in this case shows upon its face that it was not intended to be perpetual, as it expressly provides that it shall be annulled by the occurrence of a necessity for the appropriation of the water to the purposes of navigation. The probable necessity for such use in the future was, therefore, foreseen and provided for, and to avoid controversies arising over the fact of such necessity, it was further provided that the grant might be revoked, even if it seemed to the canal commissioners that an occasion for its exercise had arisen.

The parties contracted with reference to the necessities of navigation only, and whenever for any reason those necessities arose, the property conveyed, by the terms of the contract was to revert to the State. It cannot be supposed that the State, while engaged in building the canal at great expense, for the express purpose of increasing the prosperity of its people and drawing to our seaports the trade and commerce of the great west, did not anticipate to some degree its increase and extension, and the necessity of retaining its control, over the agencies by which these objects were to be accomplished. Neither can it, in justice or reason, be presumed that the State supposed or intended by the contract in question, to come under a per-

petual obligation to keep up the canal, for the purpose of furnishing a water-power to the claimants, or retain it, in its original form and location, if the necessities of the future should, in the public interest, require its alteration. It is not supposable that the sovereign would thus voluntarily hamper the exercise of its prerogative, to the detriment of its power and interest, and under settled rules of interpretation, such an intention cannot be ascribed to it, in the absence of express words in the grant authorizing such a construction. In all of its material features the facts in the case of *Ex parte Miller* (2 Hill, 418) were similar to those presented in this record, and although the right of revoking the grant was reserved in somewhat broader terms in that case, we think the principles there laid down are applicable and controlling here. In that case, as in this, a lease of the use of certain surplus water from the canal was granted to certain parties, in part as a compensation for property taken from them by the State for canal purposes, and in the grant, the right of resuming the use of the water by the grantor, when it was deemed necessary for the use of navigation was reserved, and that right was exercised by the State officers. The same obligation upon the State not to interfere with the subject of the grant was then sought to be implied from the contract as in this case, but it was there held that the facts constituted no legal claim against the State. The same questions arising in this case were necessarily involved in that, and the determination was there adverse to the claim.

It may be that a full disclosure of all the circumstances surrounding this claim might present a case appealing to the equitable consideration of the State authorities for relief, but upon the language of the contract we do not think the petitioners have a legal claim to the relief demanded.

The judgment should be affirmed.

All concur.

Judgment affirmed.