THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, RESPONDENT, *v.* THE EIGHTH AVENUE RAILROAD COMPANY, APPELLANT.

*Construction of an act providing for the extension of a street railroad — when it will not be held to relieve the company from the payment of a license fee to the city — the legislature cannot relieve the company from payments required by a contract made between it and the city — 1874, chap. 478.*

Before the defendant company was formed an agreement was entered into by its promoters with the city authorities by which permission was given to the

associates to construct and maintain a street railroad from Chambers street and West Broadway to the Harlem river, the road to be at first laid to a point at or near Fiftieth street and continued to the Harlem river when required by the common council, the associates agreeing to build and run the railroad in compliance with the directions of the street commissioner and of the common council, and to pay annually for each car such license as the common council might afterwards determine. Under this agreement, the provisions of which were ratified and confirmed by chapter 140 of 1854, the railroad was in part constructed, and the license fees prescribed by the common council were paid until 1874, after which time the company refused to pay them, claiming that it had been exonerated from the duty of so doing by the passage of chapter 478 of 1874, entitled " An act to require the Eighth Avenue Railroad Company to extend its railroad route in the city of New York, and to regulate the use and operation of the railroad of said company "

This act required the company to extend its road to the Harlem river, and authorized it to " use, maintain and operate its railroad during the term for which said company was incorporated upon and along the several streets and avenues in the city of New York upon and over which its railroad is now in use and operation, and upon and over such extension, subject only to the provisions of the general railroad act of this State, with its amendments, which shall be applicable to the railroad and extension hereby granted, except as herein provided "

*Held,* that it could not be inferred, from the language used in this act, that the legislature intended to relieve the company from the payment of the license fees.

That if the act could be so construed as to show that the legislature intended to relieve the company from liability to pay the license fees it would be inoperative, as it would violate the provisions of subdivision 1 of section 10 of article 1 of the Constitution of the United States, by impairing the obligations of the contract made with the city, and would also violate section 16 of article 3 of the Constitution of the State of New York requiring that the subject of every private or local bill shall be expressed in its title.

APPEAL from a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial.

*John M. Scribner,* for the appellant.

*E. Henry Lacombe,* for the respondent.

DANIELS, J.:

The verdict was directed by the court for license fees prescribed and charged for the running and use of street cars on defendant's railroad in the city of New York, and for interest thereon. Before the company was formed, an agreement was made between two of its promoters and others, with the city authorities, by which liberty was given to the associates to construct and maintain a street rail-

road from Chamber street and West Broadway to the Harlem river. The road was first to be laid to a point at or near Fifty-first street, and after that to be continued to the Harlem river, whenever required by the common council of the city. By the agreement which was then entered into the associates agreed to comply with the direction of the street commissioner and of the common council in the building of the railroad, the running of cars thereon, and in any other matter connected with the regulation of the railroad. And as a part of the terms upon which the agreement was made it was resolved that each of the passenger cars to be used on the road should be annually licensed by the mayor, and there should be paid annually for such license such sum as the common council might afterwards determine. The railroad was in part constructed under this agreement after the incorporation of the defendant, and it had secured the rights and privileges which it provided for. And the common council, by ordinance, prescribed a license fee of twenty-five dollars annually, for each one-horse car, and fifty dollars annually for each of the other cars used and run by the company upon the railroad. These license fees were paid by the defendant until the year 1874, but after that it refused to make any further payments claiming to have been exonerated from the obligation by section 2 of chapter 478 of the Laws of 1874. By this section it was declared that, "when the extension required by this act shall be completed and put in operation, said company shall use, maintain and operate its railroad during the term for which said company was incorporated, upon and along the several streets and avenues in the city of New York, upon and over which its railroad is now in use and operation and upon and over such extension, subject only to the provisions of the general railroad act of this State, with its amendments, which shall be applicable to the railroad and extension hereby granted, except as herein provided."

The preceding section of the act required a change in the terminus of the road from that mentioned in the agreement under which the franchise had, in form at least, been conceded by the authorities of the city. It was not very extended, and may very well have been, as it probably was, prompted by the motive to improve the franchise and railway of the company. But because of this directed change and the language employed in the second section

of the act, the defendant insists that it has become exonerated from the obligation mentioned in the agreement under which the railroad, as it was previously operated, had been constructed, from the payment of the license fees.

At the time when the agreement was made the city did not possess the legal right to provide for the construction and operation of the railroad, but by chapter 140 of the Laws of 1854, the agreement was ratified and confirmed by the Legislature. At the time of the passage of this act the railway had, in part, been constructed and where that had been done it was provided by its third section that the grants, licenses and resolutions previously referred to were thereby confirmed. And as this was one of the grants, accompanied by resolutions within the language of the statute, this confirmation included this agreement. . From that time certainly the railroad company, under the agreement and concessions made by the city, had the right to construct, maintain and operate its railroad and the rights and privileges secured to it were in no manner abridged by the act of 1874, but so far as it was declaratory that right was maintained and continued. There was no reason arising out of the antecedent circumstances or the change made by the act of 1874, for relieving the defendant from the payment of these license fees. Neither does its obligation to pay appear to have employed or engaged the attention of the legislature in the consideration or passage of the act of 1874. And it cannot fairly be inferred from the declaration that the company should use, maintain and operate its railroad during the term for which it had been incorporated, subject only to the provisions of the general railroad act of the State with its amendments, which was made applicable to the railroad and the extension at that time granted, that it was designed thereby to relieve the company from the payment of these license fees. The theory of the act is that it had granted the right to construct an extension of the road to the company, and out of that grant there could be no reason for inferring that the legislature intended that the company should no longer pay the license fees to which it had become subjected under the agreement made with the city and confirmed by the act of 1854. The provisions of the general railroad act of the State, with their amendments, which were made applicable by the act of 1874 to this company, contained

no enactment or direction whatever upon this subject, neither in the way of creating or of relieving street railway companies from these obligations. What the legislature seems to have intended by this section of the act was to subject the use and operation of the defendant's road to the provisions of the general railroad law. And they relate to its management, the duties of the officers to report, etc., and are in no way in conflict with the duty to pay the license fees in this manner imposed upon the company. The act was probably framed and passed at the instance of the company itself, and the manner in which the section was drawn betrays at least a suspicion that it was designed, by means of its obscurity, to obtain an advantage over the city which could not be expected to be secured through clear and unambiguous terms. And that this provision was incorporated with the hope that through its implication escape from the liability might be attained. And this suspicion is to some extent certainly confirmed by the immediate refusal of the company to pay the license fees accruing after the year in which this act became a law. But obscure and ambiguous language employed in this manner cannot, under well settled legal principles applicable to it, be so construed, for it is to be taken most strongly against the company, to whom the right to make the extension was granted, and at whose instance the act was probably passed. (*Dermott* v. *State*, 99 N. Y., 101.)

Beyond that this being a local act it was required by section 16 of article 3 of the Constitution of the State to express the subject of its enactment in its title. But the title to this act neither mentions nor refers to any subject indicating it to have been the intention of the legislature to discharge the railroad company from the payment of the license fees. By its title it has been denominated "An act to require the Eighth Avenue Railroad Company to extend its railroad route in the city of New York, and to regulate the use and operation of the railroad of said company." If it had been intended, through anything contained in the act, to abrogate the right of the city to demand payment of these license fees after its passage, it is fair to assume that something, either in the title or the law itself, would have clearly disclosed that intention. But nothing of that kind was either attempted or accomplished. What was done was to declare that the railroad company should be after-

wards in the use and operation of its road subjected only to the provisions of the general law of the state, with its amendments, and by that mere declaration it could not have been the design of the legislature to relieve the company from the payment of the license fees. If such a design had existed it is to be expected that it would have been expressed, either in the title or the act itself, in terms that could leave no reasonable ground whatever concerning the fact.

But if the act by any possibility could be so construed as to supersede the liability of the company to pay the license fees, it would be inoperative, for it had become liable to make such payments by the contract under which it acquired the right to construct and operate the principal part and residue of its road, and over which its cars have been and are drawn and operated. It was one of the stipulations entered into and inducing this concession, and from the time of its confirmation and ratification by the act of 1854 it has clearly been binding and effectual upon the railroad company. And after having become so, the legislature was prevented by subdivision 1 of section 10 of article 1 of the Constitution of the United States which prohibits the States from passing any law impairing the obligation of a contract from relieving the company of the obligation to perform this part of its contract. The case was rightly disposed of at the trial, and both the judgment and the order should be affirmed.

Van Brunt, P. J., and Brady, J., concurred.

Judgment and order affirmed.