THE MAYOR, ALDERMEN AND COMMONALTY OF THT CITY OF NEW YORK, APPELLANT, v. THE DRY DOCK, EAST BROADWAY AND BATTERY RAILROAD COMPANY, RESPONDENT.

*License fees and percentages on proceeds of business, payable by horse railroad companies in New York city — statutes to be construed favorably to the public.*

In this action, brought to recover license fees alleged to be due from the defendant to the plaintiff for cars run by the defendant upon its various railroad routes in the city of New York, it appeared that by chapter 512 of the Laws of 1860 certain franchises were granted to the defendant, in consideration of which a license fee was required to be paid.

That subsequently, in 1866, by chapters 868 and 883 of that year, certain additional privileges, in connection with those already conferred, were granted to the defendant, and the defendant was required, if he availed himself of such additional privileges, to pay a certain percentage to the plaintiff, the city of New York, on the net proceeds of his business.

*Held,* that the proper construction of said acts required the defendant to pay, in addition to the license fees required by the act of 1860, a further sum in case he should take advantage of the privileges granted by the acts of 1866.

That the payments required to be made under each act were independent of each other, and in each case depended upon the franchises conferred by the act imposing such obligation.

That if there was any ambiguity or doubt as to the proper construction of the acts, that construction should be adopted which was most favorable to the plaintiff.

APPEAL from a judgment in favor of the defendant, entered by direction of the court at the New York Circuit, in each of two actions having the above title.

*J. J. Townsend, Jr.,* for the appellant.

*John M. Scribner,* for the respondent.

BRADY, J.:

The question presented by this appeal is whether the defendant is obliged to pay a license fee to the plaintiff for each car run over its Grand street route, as contemplated by the act of 1860 (chap. 512). The obligation to do so is denied upon the proposition that by the Laws of 1866 (chap. 883), which ultimately gave the whole route, the payment of a percentage on net proceeds was imposed,

which it was the intention of the legislature only to enact. And the defendants invoke the doctrine in the legal phrase, *expressio unius est exclusio alterius.* The plaintiffs, however, insist, in answer, that the route involves three acts of the legislature (chap. 512 of the Laws of 1860, and chaps. 868 and 883 of the Laws of 1866), under the first of which the license fee is required to be exacted, and the latter being extensions of the original franchise, the imposition of a percentage is quite consistent with the payment of the license fee as a proper tribute for the enlargement of the original grant, and particularly as a liberal construction in favor of the public must be given of all statutes conferring privileges where any ambiguity exists or a dual interpretation may be indulged. In other words, the public is entitled to the benefit of the doubt. (*The Mayor* v. *Eighth Ave. R. R.,* 43 Hun, 618; *Dermott* v. *State,* 99 N. Y., 107; *Mayor* v. *Broadway and Seventh Ave. R. R, Co.,* 97 id., 281.) "The rule had its origin in the desire to protect the sovereign against imposition, and to preserve the royal prerogatives against grasping and insatiate courtiers. In this country it has usually been applied to grants of charters, franchises and privileges made by legislative acts, and to such cases, where the acts are prepared by the grantees and expressed usually in their language, the passage of the acts being solicited by them primarily, if not exclusively, for their own benefit, there can be no objection to its rigid application." And it prevails in England as well. (*Stourbridge Canal Co.* v. *Wheeley,* 2 B. & Ad., 792; *Gildart* v. *Gladstone,* 11 East, 685; *Kingston Dock Co.* v. *La Marche,* 8 B. & C., 42.) "It is now the settled doctrine, both of the English and the American courts, that an act of incorporation is a bargain between a company of adventurers and the public; that the rights of the corporation are such as the very terms of the enactment confer, and that *any ambiguity in them must operate against the adventurers* and in favor of the public." (*Dugan* v. *Bridge Co.,* 27 Penn., 303.) "The rule of construction in this class of cases is, that it shall be most strongly against the corporation. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms, or by an implication equally clear. The affirmative must be shown. Silence is negation and doubt is fatal to the claim. This doctrine is vital to the public welfare. It is axiomatic

in the jurisprudence of this court." (*Fertilizing Company* v. *Hyde Park*, 97 U. S., 659 ; *Newton* v. *The Commissioners*, 100 id., 561 ; *Rice* v. *M. & N. R. R. Co.*, 1 Black [U. S.], 358.)

In the *Mayor* v. *Broadway, etc., Railway* (*supra*), the court said' in considering what license fee should be paid to the city by the defendants in that case, and about the amount of which it was claimed there was doubt : " If any ambiguity exists as to the amount of the fee to be paid, then the greater amount should be adopted, for it is a well-settled rule that any ambiguity in a grant of privileges must operate against the grantee and in favor of the public. This is fully established by the adjudications in this country and in England."

The right of the plaintiff tested by these rules is easily ascertained. The act of 1860 declares that a license fee must be paid and the franchise under consideration is based partly upon that statute. The first act of 1866 refers to it and grants to the defendants other privileges in connection with those already conferred, and the second again refers to it, and extends the franchise, exacting, if the defendant avail itself of its benefits, the payment of a percentage on net proceeds. There is no suggestion in the language of the act, express or implied, that the percentage is in lieu of license fees, or that the percentage is the only burden imposed for the extension granted, in connection with the original franchise. On the contrary, the language imports the impost of the percentage in addition, inasmuch as the repealing clause is of all acts and parts of acts inconsistent with the provisions of the act discussed, so far as they are in conflict therewith. The original act exacted a license fee and the act of 1866 giving the extension, a percentage. The extension enlarged the franchise, and it is quite reasonable to suppose that the new grant, for such it was, demanded further tribute in the minds of the legislature, particularly as all these different franchises united would call for but one license fee as the same was carried out. They only repealed acts inconsistent, so far as they were in conflict. The act of 1860, even 'if inconsistent, which is admitted only for argument's sake, was certainly not in conflict because of the license fee. The two tributes might well stand together, the first as an indemnity for the grant then given and the latter because of the greater franchise conferred. If there be any ambiguity, however, or if there

may be a dual interpretation of these acts, the result, as we have seen, must favor the plaintiffs. The impost of a license fee and percentage, as the defendant's business shows, was not only not at all oppressive but just. The gains from the franchise are such as to warrant even a larger tribute than that paid by the license fee and percentage. The act of 1866 was, no doubt, drawn by the defendant's agents, and if the design was to avoid or to provide against the payment of license fees, in addition to the percentage, it could have been accomplished readily by the proper expressions therefor; and as that was not done it warrants the presumption that if done it would not have passed, and that the company was willing, therefore, to incur the result of a controversy in regard to it rather than the defeat of the extension desired.

The observations made by DANIELS, J., in the *Mayor* v. *Eighth Avenue Railway Company* (*supra*), are applicable here. "The act was probably framed and passed at the instance of the company itself, and the manner in which the section was drawn betrays at least a suspicion that it designed, by means of its obscurity, to obtain an advantage over the city which could not be expected to be secured through clear and unambiguous terms." * * * "But," continues Judge DANIELS, "obscure and ambiguous language employed in this manner cannot, under well-settled legal principles applicable to it, be so construed, for it is to be taken most strongly against the company, to whom the right to make the extension was granted, and at whose instance the act was probably passed."

The judgment, for these reasons, should be reversed and a new trial ordered, with costs to the appellant to abide event.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.