Hawkes v. Taylor.

---

## Louise R. Hawkes v. Joel V. Taylor.

70 255
175s 344

1. CONTRACTS—*Construction of—Mentioning Part of a Class Excludes the Remainder.*—In construing contracts the expression of one or more things of the same class will be regarded as implying the exclusion of all not expressed; and this even if the law would have implied all had none been expressed.

2. SAME—*General Ground of a Legal Implication.*—The general ground of a legal implication is that the parties to the contract would have expressed that which the law implies, had they thought of it, or

had they not supposed it was unnecessary to speak of it because the law provided for it.

3. SAME—*Character of Obligations Raised by Legal Implication.*— Whatever obligation is sought to be raised by legal implication must be of such a character as the court will assume would have been made by the parties had their attention been called to the subject, and their conduct inspired by principles of justice.

4. SAME—*The Rule as to Implied Obligations Applied.*—A contract for the sale of an interest in a mine provided for the payment to the vendor of a proportion of the net profits arising from the operation of the mine, but contained no provision requiring the operation of the mine. *Held*, that such a provision could not be implied, as courts have no power, by implication or otherwise, to make contracts for parties.

Assumpsit, on a contract of sale. Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed May 24, 1897.

### STATEMENT OF THE CASE.

This was a suit brought by Louise R. Hawkes against Joel V. Taylor on the following contract :

" This agreement, made this 26th day of May, A. D. 1885, between Joel V. Taylor, party of the first part, of Cook County, Illinois, and Louise R. Hawkes, of the same place, witnesseth : Whereas, the said party of the second part has this day sold and conveyed to the party of the first part all her right, title and interest in and to the following described mining property situate in Ruby mining district in the county of Gunnison, State of Colorado, to wit, an undivided one-eighth of the Ruby mining claim, an undivided one-eighth of the Sunset lode mining claim, an undivided one-eighth of the Arab lode mining claim, an undivided one-eighth of the Peggy lode mining claim, an undivided one-eighth of the Gem lode mining claim, an undivided one-eighth of the Old Sheik lode mining claim.

Now, therefore, this agreement witnesseth, that the party of the first part is to pay as a consideration for the conveyance of the property above described, as follows :

First.   Five thousand dollars ($5,000) cash, which sum has already been paid over to the party of the second part.

Second.   The party of the first part is to have the option,

Hawkes v. Taylor.

within one year, to convey to the party of the second part real estate of the cash value of ten thousand dollars ($10,000); the value of such real estate, in case the parties can not agree, to be determined by arbitration, each party to select one arbitrator, and in case they can not agree they are to select a third, and the decision of two of such arbitrators shall be conclusive on the parties thereto; and in case said conveyance shall be made, it shall be in full payment for the said property conveyed to the party of the first part.

Third.   In case said party of the first part shall not elect to make such conveyance of land as is above provided for, then the party of the first part shall be entitled to receive out of the net profits of the property so conveyed by the party of the second part the sum of ten thousand dollars ($10,000), and after having received the sum of ten thousand dollars ($10,000) aforesaid, he shall pay to the party of the second part one-half of the net profits of said property, until the net profits, after first deducting the sum of ten thousand dollars, shall equal forty thousand dollars each, and to begin as soon after the net profits amount to the sum of one thousand dollars, after the party of the first part shall have received the sum of ten thousand dollars from such net profits, and the party of the second part is thereafter to receive each alternate one thousand dollars of the net profits until she has received from such net profits in all the sum of twenty thousand dollars; provided, however, that in case the net profits above described do not amount to the sum of fifty thousand dollars within five years from the date of this agreement, then the party of the second part shall only be entitled to one-half of the net profits over and above the sum of ten thousand dollars to be first deducted that have accrued within five years from the date hereof. Such sum, however, in no event to exceed the sum of ten thousand dollars.   This agreement shall be binding on the heirs, executors, administrators and assigns of the respective parties.                                 JOEL V. TAYLOR.
                                 LOUISE R. HAWKES."

The declaration alleged that plaintiff conveyed the property described in the contract; that she received $5,000 in cash, but no real estate; that defendant did not work the mines, but sold same shortly after the conveyance to him, to other parties, thereby disabling himself from working the mines, and that plaintiff has not been paid any sum for net profits, and has been damaged $30,000. The common counts were added.

The defendant pleaded the general issue and several special pleas. After demurrers by plaintiff the following special pleas remained:

" Third. That defendant owned only an undivided one-eighth of the mine, the residue being owned and controlled by plaintiff and her associates; that these latter refused to work the mine and prevented defendant from so doing, though defendant was always ready to contribute his share.

Sixth. That defendant owned only one-eighth in the mine; that plaintiff and her associates formed a corporation to take the property; that at their request defendant joined with them and conveyed to the corporation; that after the formation of the corporation and conveyance to it of the mines, defendant held a minority of the stock, the majority being owned and controlled by plaintiff and her associates; and that defendant always stood ready to contribute his share to the working of the mines, but the others refused to work same."

Plaintiff replied to third plea by denying that she and her associates owned the remainder of the mines or controlled the working thereof, or prevented defendant from working them, or that defendant was ready to contribute any money for working said mines. She then alleged that after selling one-eighth to defendant she had remaining an eighth interest. This interest she sold to him, but at his request retained it till the formation of a corporation by defendant, and then, pursuant to his request, conveyed direct to the corporation. Certain shares of stock were issued to her and stood in her name on the books of the company, but were in fact not hers, but nominally held by her to legally

qualify her to act as a director.   She was made a director, and remained nominally such at defendant's request.   The defendant, however, was elected president, treasurer and general manager of the company, and had complete control thereof.

To the sixth plea she replied by denying the allegations thereof and alleging more at length the sale by her to defendant of her remaining one-eighth interest, the retention by her of the record title, the conveyance of it by her to the corporation formed by defendant, the issuance to her of five hundred shares of stock which nominally stood in her name to enable her to be elected a director, and the assignment at once by her of all her stock but the five hundred shares to defendant—all at defendant's request.   She further alleges that defendant was elected and continued to be the president, treasurer and general manager of the corporation; that he had supreme control thereof, and that she never participated in any meetings nor shared at all in the control and management of the company.

Defendant rejoined by denying his exclusive control of the mines and alleging that plaintiff and her associates controlled a majority of the stock of the corporation.

He also alleged that the company worked the mines in good faith, expending thereon $20,000; but they were unproductive, and although the five years mentioned in the contract had expired, no net profits had ever been derived from the mines.

The case was tried before a jury.   At the close of plaintiff's direct evidence, defendant's counsel moved the court to instruct the jury to return a verdict for defendant, which motion the court overruled, whereupon defendant testified in his own behalf and offered some documentary evidence, at the conclusion of which the court, of its own motion, instructed the jury to return a verdict for defendant, which was accordingly done, the court refusing to permit plaintiff to introduce evidence in rebuttal, which plaintiff offered to do.

On the trial plaintiff proved contract with Taylor, intro-

ducing her deed to him of the mining interests described in the contract, also deed of same interests by Taylor to the corporation. Evidence was introduced tending to show that Taylor paid Mrs. Hawkes the $5,000 as called for in the contract, and no more; that Taylor, upon the organization of the corporation, became president, treasurer and general manager, and continued as such until the time of the trial, and as such had full management and control of the mines; that the corporation made no profits out of the mines, but expended several thousand dollars in working them. That Mrs. Hawkes was one of the directors in said corporation.

The plaintiff offered evidence tending to prove that Mrs. Hawkes was only nominally a stockholder and director; that she became such at Taylor's instance and request; that she refused to have anything to do with the company, and refused to attend any meetings of stockholders or directors thereof; that the mines were not worked in a minerlike fashion; that the proper appliances and machinery were not employed and used, and that they could have been worked so as to produce large profits. All of this evidence was excluded by the court, and plaintiff duly excepted.

R. M. WING, C. C. CARNAHAN and D. J. HAYNES, attorneys for appellant.

The law will imply from the contract sued on, that if the defendant, Taylor, did not elect, within one year, to convey to the plaintiff, Mrs. Hawkes, the real estate therein specified, that he would within the five years duly and properly work and develop the several mining claims so conveyed to him, to the end of producing the specified net profits. Berger v. Peterson, 78 Ill. 633; Nichols v. Mercer, 44 Ill. 250; Oliphant v. The Woodburn Coal & M. Co., 63 Ia. 332; Skidmore v. Eikenberry, 53 Ia. 621; Potter v. Ontario & Livingston M. Ins. Co., 5 Hill (N. Y.) 147; Roy v. Hodge, 13 Pacific Rep. 599; Allamon v. The Mayor, etc., City of Albany, 43 Barb. (N. Y.) 33, 37.

A contract must be performed in the way the parties to

it understand it at the time of its execution. Potter v. Ontario & Livingston M. Ins. Co., *supra;* Walker et al. v. Tucker et al., 70 Ill. 527.

The plain implication of the contract is, that the defendant knew at the time he entered into it that the mines were valuable and well worth undertaking, else why did he not reserve an exception in his contract to excuse its performance as made? This he should have done if he designed to take advantage of the fact or treat the transaction as an experiment.

For a contract must be performed as made. Stow v. Russell, 36 Ill. 20; Bacon v. Cobb, 45 Ill. 47.

· The execution of the contract obligated Taylor to either work the mines or to cause them to be worked with a view of producing profits, and not only to work them but to work them as a prudent man would work his own property. Walker et al. v. Tucker et al., 70 Ill. 527; Taylor's Landlord and Tenant, Sec. 344; Skidmore v. Eikenberry, 53 Iowa, 621.

Geo. W. Wilbur and Newton A. Partridge, attorneys for appellee.

Mr. Justice Waterman delivered the opinion of the Court.

Appellant claims that appellee was by the contract bound to " do everything which would be necessary to effectuate the purpose of the transaction, *i. e.*, to make the mining interests conveyed to him by Mrs. Hawkes produce for her the $20,000 profit, if possible.

If appellee and appellant so intended, the question arises why, by a few simple words, they did not put such agreement in the contract.

Appellant insists that the contract contains that which is not there in terms, nor by necessary implication.

It seems that in making this contract the attention of the parties must have been drawn to the question of whether appellee was bound to go on and develop these mines, re-

gardless of what the prospect for profitably doing so might be,.and that the failure of the parties to stipulate that he should do so, indicates that appellee did not intend to so agree, nor did appellant understand that he had so promised.   If appellee did, directly or impliedly, so promise, that he can not by any transfer relieve himself from the obligation is manifest.

Courts do not, by implication or otherwise, make contracts for parties.

The question in this regard is : What contract did the parties make ?

The general ground of a legal implication is, that the parties to the contract would have expressed that which the law implies had they thought of it, or had they not supposed it was unnecessary to speak of it because the law provided for it.

The expression of one or more things of the same class, implies the exclusion of all not expressed; and this even if the law would have implied all, had none been expressed. Parsons on Contracts, Vol. 2, 515; Vol. 1, 555, 6th Ed.

Whatever obligation is sought to be raised by legal implication must be of such a character as the court will assume would have been made by the parties had their attention been called to the subject, and their conduct inspired by principles of justice.   Dermott et al. v. The State, 99 N. Y. 101--109; King v. Leighton, 100 N. Y. 386–391; Genet v. Del. & Hudson Canal Co., 136 N. Y. 593.

Courts, in reading into contracts implications not clearly there existing, trench upon dangerous ground.

The judgment of the Superior Court is affirmed.