Robert A. Byrns, Respondent, *v.* United Telpherage Company, Appellant.

*Implied covenant to exercise reasonable skill — it does not arise where a manufacturer employs an agent to sell its goods — implied covenant that the manufacturer will continue in business.*

Where a corporation engaged in the business of manufacturing and installing electrical plants, enters into a contract whereby it appoints an individual its selling agent for a period of three years and agrees to pay him as compensation a certain profit upon the sales made by him, an implied covenant does not arise on the part of the corporation to respond to the selling agent in damages if it neglects to exercise reasonable diligence and skill in the conduct of its business.

*Semble,* that the contract did embrace an implied covenant on the part of the corporation that it would not willfully incapacitate itself from carrying on business during the term of the contract.

Appeal by the defendant, the United Telpherage Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 1st day of August, 1904, upon the verdict of a jury, and also from an order entered in said clerk's office on the 23d day of July, 1904, denying the defendant's motion for a new trial made upon the minutes.

*Clarence Bishop Smith,* for the appellant.

*Dallas Flannagan,* for the respondent.

WOODWARD, J.:

The plaintiff in this action was employed by the defendant as its selling agent for certain heavy electrical overhead conveying machinery, known as telpherage plants. The plaintiff was to devote his entire time to the business, was to maintain a separate sales office at his own expense, and his compensation and expenses were to be covered solely by a contingent commission measured by the difference between the defendant's prices to him and the prices at which he might be able to sell the plants. The relations between the parties dates back as far as March, 1901, at which time a contract for one year was entered into, and was subsequently extended by mutual consent, until on the 1st day of January, 1903, a contract for three years, terminable by either party on giving six months' notice, was entered into. The plaintiff was originally very successful, but it is claimed that, by reason of the failure of the defendant to use reasonable skill and dispatch in the conduct of its business of manufacturing and installing these plants, the plaintiff was unable to make sales and the plaintiff gave the six months' notice provided by the contract and terminated the agency on the 27th day of October, 1903. The plaintiff on his part elected to quit the employment very soon after giving the six months' notice, and he brings this action to recover the commissions which he claims he might have earned in the employment if the defendant had not been guilty of negligence in conducting its business. The questions involved were submitted to the jury, resulting in a verdict for the plaintiff, and the defendant appeals.

The plaintiff's theory, and the one which the learned trial court submitted to the jury, is that under the contract of employment the employer undertook to conduct his business in a reasonably prudent manner, to the end that the expectations of his selling agent should not be disappointed. In other words, this is an effort to extend the law of negligence to a contract of employment, so that it shall become a question for a jury to determine whether the employer has exercised reasonable diligence and skill in the conduct of his business. No such provision is to be found in the language of the contract, and the question is whether a covenant of this character is to be implied ; whether it was fairly within the contemplation of the parties in entering into this contract that the employer should

be liable to the selling agent in the event that his business should not be conducted with reasonable skill and diligence. It seems clear that the mere statement of the proposition suggests the answer and that there can be no such implication. There was, no doubt, the implied covenant that the defendant would not willfully incapacitate itself from carrying on business during the contract term, which ended on the 27th day of October, 1903, but to go beyond this and to hold that the employer contracted that he should conduct his business with ordinary care and skill is destroying the element of mutuality in the contract and making the employer an insurer of the income of a commissioned agent, when the very object of a contract to pay commissions is to limit the liability of the employer and divide the risks of the business. The employer invests his time and money in a business and employs agents upon commission, and the fair construction of such a contract, in the absence of express covenants, is that they mutually undertake the risks of the business. The investment of time and money on the part of the employer is the guaranty that he will conduct such business to the best of his ability, just as the investment of the agent's time and money is a guaranty that he will do the best he can to earn commissions, and neither party has any remedy against the other for a failure to realize upon expectations.

In commenting on *M'Intyre* v. *Belcher* (14 C. B. [N. S.] 654), where the plaintiff sold out his business as a surgeon, getting in return a cash payment for his drugs and instruments of about seventeen pounds sterling, but taking an agreement that the purchaser would account for and pay over to the plaintiff the one-fourth part of the receipts of the business for four years, if he should live so long, provided their annual aggregate should reach three hundred pounds, the court say : "The defendant during the third year, chose to abandon the business, and the plaintiff sued. There was no express agreement that the purchaser would continue the business, or that, if he did, that its annual proceeds would reach £300. The court held that a covenant was implied that the defendant would not wilfully incapacitate himself from carrying on the business. Of course, that plaintiff took the risk, beyond the payment in cash, of the defendant's business capacity, of his tact and skill, of his industry and ability to gather in more than the annual £300 ; but

the risk he did not take was of the wilful or negligent abandonment by the defendant of any effort to do business at all, so that the earning of profits was rendered utterly impossible." (*Genet* v. *D. & H. C. Co.*, 136 N. Y. 593, 608.)

This, it seems to us, is the law of this case. The defendant was bound by the terms of its contract to continue in business during the period of the employment; but it did not contract that it would conduct its business with reasonable skill, ability or tact, as measured by the standard which a jury might determine. The implication of a contract between parties upon a subject to which their attention has been directed, and which they have omitted to provide for by express stipulation, should not be made by a court, except to enforce a manifest equity, or to reach a result which the unequivocal acts of the parties indicate an intention to effect. (*King* v. *Leighton*, 100 N. Y. 386, 391; *Genet* v. *D. & H. C. Co.*, *supra*, 609.) Clearly there are no unequivocal acts on the part of the parties to this contract to indicate that they ever intended that the defendant was bound to conduct its business with any greater degree of skill, prudence and tact than the defendant should judge necessary and proper for the accomplishment of its own purposes. The proper test to be applied in determining whether a promise is implied or not is to consider what the parties would most likely have said upon the question had it been presented at the time of entering into the contract (*Dermott* v. *State*, 99 N. Y. 101), and it is hardly to be presumed that the defendant would have been willing to stipulate that he would conduct his business with reasonable care, leaving the question of what should constitute reasonable care to the determination of a jury after the alleged breach of the contract. That would not be such a contract as a reasonably prudent man would be likely to make; not such a contract as a reasonably sagacious man would demand on entering an employment, and it is no part of the duty of courts to make new contracts for parties or to read into old ones harsh and unreasonable terms. No case to which our attention is directed supports the doctrine on which this case was submitted to the jury, and while the novelty of a case is not conclusive that it may not be entertained, it is proper to be considered, in the absence of controlling reasons to the contrary, and in the case now before us we see no reason for extending the doctrine of negligence to give a

cause of action resulting in a degree of uncertainty which cannot fail to be very troublesome in its practical application to contracts of employment.

The judgment and order appealed from should be reversed, with costs.

HIRSCHBERG, P. J., BARTLETT, JENKS and MILLER, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.