HERBST and another, Respondents, vs. LOWE, Appellant.

*February 4 — February 23, 1886.*

*Contracts: Instruments construed together: Parol evidence to vary written agreement.*

Upon a contract for the sale of real estate and a business in connection therewith, the deed, bond, notes, and mortgage, which are all executed and delivered at the same time, must be taken together and construed as one instrument, for the purpose of determining the character of the transaction and the intention of the parties; and, in the absence of fraud or mistake, the parties will be conclusively presumed to know the contents of such papers, and proof of antecedent or contemporaneous oral agreements cannot be admitted to alter or control the written contract.

APPEAL from the Circuit Court for *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

"The complaint alleges, in effect, that November 28, 1882, the defendant, being the agent at Richfield, Washington county, for the McCormick Harvesting Machine Company, and having a dwelling-house on two village lots therein, and a warehouse, falsely represented and pretended that he had such agency for the five years next ensuing, with the exclusive right to the territory for ten miles around, and with the right to sell it, and that he could procure the appointment of the plaintiffs as such agents for said term, and then and there proposed to sell said agency to the

plaintiffs for $1,300, and said house and lots and warehouse for $1,500; that said warehouse was of the value of $300 in connection with such agency, but valueless without; that the dwelling-house and lots were worth $1,200; that the plaintiffs, believing and relying upon such representations and pretenses, agreed to pay, for the dwelling-house, lots, and warehouse, $1,500, and for such agency in the place of the defendant for five years, $1,300, and thereupon paid the defendant $1,300 cash for said agency, and $100 cash upon the other property, and took a conveyance of all said real estate to the plaintiff *Herbst*, and for the balance of said purchase price the plaintiff *Herbst* then gave the defendant his note for $1,400, secured by his mortgage on said real estate, which note and mortgage the defendant thereupon sold and transferred to a *bona fide* purchaser for value; that the plaintiffs purchased said real estate only for the purpose of securing said agency, and to be used in connection therewith; and that said representations were false, and so known to be at the time by the defendant.

"The answer, in effect, denied all false representations and pretenses, and alleged that the defendant did not have the agency for five years, nor any right to sell the same; that, in the negotiations preceding the completion of the sale, the defendant, disclaiming all right to sell the agency, agreed to do what he could to procure the plaintiffs' appointment for a year, and if he failed he would go in partnership with them in the business; and that the plaintiffs were to pay $2,900 for the house, lots, and warehouse, payable in instalments, and that the defendant did go into partnership with them.

"The cause was tried by a jury, who returned a special verdict to the effect (1) that, before any contract was made, the defendant falsely and fraudulently represented to the plaintiffs that he had a right to sell and could sell the agency; (2) that November 15, 1882, the plaintiffs, relying

upon such representations, entered into a written contract, whereby the defendant agreed to sell to them the premises and warehouse for $1,500, and the agency for five years at $1,400; and the purchase was finally consummated November 28, 1882; (3) that the contract of November 15, 1882, was not for the purchase of the premises and warehouse for $2,900; (4) that, before paying any money on the purchase price, the plaintiffs were not informed, and had no reason to believe, that the defendant would not sell the agency; (5) that the plaintiffs did not accept the bond in evidence before paying any money on the purchase and before the execution of the deed and mortgage, with knowledge that the defendant could not convey the agency, or under circumstances which would afford them reason to believe he could not convey the same; (7) that at the time of the execution and delivery of the bond, the defendant did not in good faith intend to endeavor to procure the agency; (8) that the parties did not, between November 28, 1882, and January 15, 1883, verbally agree, in lieu of procuring such agency, to become partners and procure a joint agency; (9) nor did they enter into such contract, nor become such partners; (10) nor did the defendant in December, 1882, procure permission from the company for such joint agency; (11) that January 15, 1883, the defendant and the plaintiff *Schlosser*, with the assent of *Herbst*, entered into the written articles of partnership in evidence, and as such partners carried on the business until January 8, 1884; (12) that January 25, 1883, the defendant and the plaintiffs jointly became agents for the McCormick Company for that year; (13) and such agency was carried on by the defendant and *Schlosser* with the assent of *Herbst;* (14) but such joint agency was not accepted by the plaintiffs in lieu of an appointment of the plaintiffs alone; (15) that such partnership was dissolved by mutual consent, January 8, 1884; (16) that the consideration named in the deed to the plaintiffs was

$2,900; (17) that on November 28, 1882, the plaintiffs received and accepted the deed of the lands and the bond in evidence, in consummation of the purchase on the part of the defendant, and, as an equivalent therefor, paid the defendant $500 cash, and their joint notes, respectively, for $1,000, $500, $500, and $400, secured by their joint mortgage back on said real estate, but with the understanding that said agency was thereby conveyed to them; (18) that the value of said real estate, November 28, 1882, was $1,500; (19) that the actual damage sustained by the plaintiffs by reason of the final consummation of said purchase was $1,300.

" From the judgment entered upon said special verdict in favor of the plaintiffs the defendant appeals."

For the appellant there was a brief signed by *Cotzhausen, Sylvester, Scheiber & Sloan*, attorneys, and *F. W. Cotzhausen*, counsel, and oral argument by *Mr. Cotzhausen*.

For the respondents there was a brief by *Paul A. Weil*, attorney, and *Frisby & Gilson*, of counsel, and oral argument by *Mr. Gilson*.

CASSODAY, J.  The preliminary agreement drawn by Klippel, and signed by the parties at Richfield on or before November 15, 1882, was lost before the trial.  The testimony as to the contents of that agreement was in conflict, and hence the findings of the jury thereon may be accepted as verities.  According to those findings, that agreement was procured by false representations of the defendant as to his right to sell the agency; but the agreement for the purchase was not finally consummated until November 28, 1882.  Then the papers were drawn by Haase at West Bend. They consisted of a deed of all the real estate in question to the plaintiffs, executed November 28, 1882, by the defendant, reciting a consideration of $2,900, and a bond executed by the defendant at the same time to the plaintiffs in the

penal sum of $1,000, conditioned, in effect, that if the defendant should be unable to furnish the agency of the McCormick machine to the plaintiffs in person, then he, having the agency, thereby bound "himself to go and to join in copartnership with . . . the plaintiffs for the sale of said McCormick machines," and if he fulfilled his agreement, then the obligation was to be "null and void, otherwise in full force and effect." In consideration of that conveyance and that bond, and as an equivalent therefor, the plaintiffs at the same time paid to the defendant $500 cash, and also delivered to him their four several joint notes, in the aggregate amount of $2,400, secured by their joint mortgage on said real estate. The jury found that the plaintiffs received and accepted the deed and bond, and executed and delivered the notes and mortgage, with the understanding that the agency was thereby conveyed to them. The deed, bond, notes, and mortgage, having all been executed and delivered at the same time, must be taken together and construed as one instrument, for the purpose of determining the character of the transaction and the intention of the parties. *Gillman v. Henry*, 53 Wis. 468 *et seq.; Evenson v. Bates*, 58 Wis. 24; *Kimball v. Baker*, 62 Wis. 529; *Dunlap's Adm'r v. Wright*, 62 Am. Dec. 506; *Newbegin v. Langley*, 63 Am. Dec. 612. Thus taken, they seem to cover the whole transaction and leave no room for doubt, uncertainty, or ambiguity with respect to it. *Ibid.* The simple conditions of the bond were that, if the defendant failed to furnish the agency, he would go into partnership with the plaintiffs. He did fail to furnish the agency, and did go into partnership with them, as agreed. This was a complete satisfaction of the obligations of the bond.

The rule is universal that, in the absence of fraud or mistake, proof of antecedent or contemporaneous verbal agreements between contracting parties cannot be received to alter or control their written agreement. *Ibid.; Hubbard*

*v. Marshall*, 50 Wis. 322; *Hooker v. Hyde*, 61 Wis. 208. This is on the theory that all such prior negotiations are either merged in or excluded by the contract finally made. The same is true in respect to any prior preliminary agreement, in so far as it is covered by, or in conflict with, the final contract. *Bailey v. Wells*, 8 Wis. 141; *Sweet v. Mitchell*, 15 Wis. 641; *Ferguson v. Weatherford*, 4 J. J. Marsh. 195; *Moale v. Hollins*, 11 Gill & J. 11; *Oiler v. Gard*, 23 Ind. 212; *Vanderkarr v. Thompson*, 19 Mich. 82; *Kerr v. Calvit*, 12 Am. Dec. 537; *Whitney v. Smith*, 33 Minn. 124.

Contrary to these principles, the jury found, from the parol evidence, that the papers drawn November 28, 1882, were received and accepted by the plaintiffs "with the understanding that the agency aforesaid was thereby conveyed to them." This was covered by and in direct conflict with the conditions of the bond. There is no finding that there was any mistake made in the execution of any of the papers; nor that there was any fraud or deception practiced upon the plaintiffs as to the contents of the bond or any of the papers. In the absence of such fraud or mistake, the plaintiffs were conclusively presumed to know the contents of the papers, and were bound by the conditions, provisions, and agreements therein contained. *Fuller v. Madison Mut. Ins. Co.* 36 Wis. 603. It will not do for men to enter into a contract, and then, when called upon to abide by its conditions, say that they did not read it, or were unaware of what it contained. *Sanger v. Dun*, 47 Wis. 620.

It follows that so much of the answer of the jury to the seventeenth question as found that the plaintiffs received and accepted the deed and bond with the understanding that the agency was thereby conveyed to them, was contrary to the conclusive, and hence undisputed, evidence. From what has been said it conclusively follows that the first, second, third, fourth, and fifth findings of the jury, as

to what occurred between the parties prior to November 28, 1882, were wholly irrelevant and immaterial, and did not, with the other findings referred to, authorize a judgment in favor of the plaintiffs. The seventh finding was to the effect that, at the time of the execution and delivery of the bond, the defendant did not in good faith intend to endeavor to procure for the plaintiffs an appointment from the company to the agency. But, by the written contract then made, the defendant did not agree to procure such appointment, but merely that, if he was unable to procure the agency, he would go into partnership, which he did. If the defendant failed to procure the agency, then, by the express terms of the written agreement, he was simply to go into partnership, which he did. Such being the contract between the parties, and its conditions having been thus performed by the one party and accepted by the other, it would be absurd to hold that the plaintiffs are still in a position to vitiate such contract, even if the defendant did not at the time " in good faith intend to endeavor to procure " the appointment. The consequence of a failure to perform that condition of the bond having been expressly provided for in the contract itself, and then finally acted upon by all the parties, must be regarded as a satisfaction of the agreement, regardless of the question whether the absence, at the time, of such intent " to endeavor to procure " could, under other circumstances, have been regarded as such a false representation of a then existing fact as might have avoided the contract. Whether the mere absence of an intent to perform a promise as agreed, standing by itself, can be made available in an action at law as a tort, may be doubtful, and possibly the decisions may be in conflict, as claimed by counsel. But the view we have taken of this case renders it unnecessary to determine it here. We are all agreed that there has been a mistrial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.