<hr />

SECURITY TRUST & LIFE INSURANCE COMPANY, Respondent,
vs. ELLSWORTH and wife, Appellants.

*September 14—October 9, 1906.*

*Contracts: Several agreements construed together: Execution: Parties: Modification: Insurance agents: Advances to be repaid from commissions: Mortgages: Resignation of agent: Discharge from obligation as to advances.*

1. A note and mortgage to an insurance company, and agency contracts between the company and the mortgagor and others, all relating to the same subject matter and delivered at the same time, are construed together as one instrument.

2. A written contract reciting that it was an agreement between an insurance company and one E. contained a provision to the effect that said E. and certain third persons agreed that all renewal commissions accruing under certain agency contracts with E. and said third persons should be paid to the company in liquidation of a certain note. *Held*, that the signatures of said third persons were not necessary to make the contract binding, and that the provision mentioned was in effect a promise on the part of E. that the commissions should be paid as stated.

3. An agreement between an insurance company and an agent, providing that all renewal commissions accruing under certain agency contracts should be paid to the company in liquidation of a note, secured by mortgage, given by the agent for advances theretofore made to him, provided also that no call for payment of any part of the note should be made at any time in excess of the renewal commissions. Another agreement, bearing a later date, to which associate agents were also parties, provided for applying the renewal commissions to the repayment of advances thereafter to be made. Both agreements and the note and mortgage mentioned were delivered at the same time and took effect as parts of the same transaction with the consent of all parties, who obviously contemplated that the commissions would be sufficient to pay both the note and the future advances. *Held*, that the agreement of the later date did not supersede the other, and that there was no obligation to pay the note except in so far as there might be renewal commissions available for the purpose under the agreements.

4. The agency contracts in such case did not provide how long they should be in force, but recognized the right of resignation by providing that in case of resignation of the agents the company should have authority to pay subordinate agents any commissions, etc., which the agents should have agreed to pay them. *Held*, that there was no implied covenant, arising from the existence of the note and mortgage and the agreements for repayment of advances, or otherwise, which would prevent the agents from resigning if, after fair and reasonable efforts, they were unable to conduct the business successfully.

5. Having reasonably and lawfully exercised his right to resign, and having thereby ceased to be entitled to receive renewal commissions, the agent who had given the note and mortgage payable from such commissions became, by such resignation, discharged from obligation upon the mortgage indebtedness.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

This action was brought for the foreclosure of a mortgage
on lands in Kenosha county, Wisconsin, given by the defend-
ants to the plaintiff company to secure the payment of
$15,000 as evidenced by a promissory note dated December
22, 1903, payable one year after date with interest.   On
January 6, 1903, plaintiff, a life insurance company, made
a contract in writing appointing the defendant *Henry Ells-
worth* and his minor son Huber Hurd Ellsworth its general
agent, located at Chicago, over certain designated territory,
for the purpose of canvassing for applications for insurance,
collecting and paying over premiums on such insurance when
effected, and for the performance of such other duties as
might be required of said agent, with the right to appoint
subordinate agents, subject to the approval of the plaintiff,
and providing that, in consideration of services rendered, the
agent should be allowed, during the continuance of his agency
and no longer, certain commissions upon the business done,
as specified in such contract.   This contract made no pro-
vision for advances to the agent, except an allowance of $150
per month for office expenses, and provided further that such
allowance should not be charged against the agent, and should
be continued until the renewal income of the agent should
amount to $6,000 per annum.   The defendant *Henry Ells-
worth* entered upon the performance of said contract dur-
ing the year 1903, and made contracts of insurance, received
premiums, and also advanced about $15,000 for the benefit
of the business, and on or about December 28, 1903, it was
found there was due plaintiff from defendant *Henry Ells-
worth* on account of its portion of the premiums on such in-
surance $15,000, to secure which sum the note and mortgage
in question were given.   At the time of the execution of this
note and mortgage an agreement in writing bearing date
December 28, 1903, was entered into, as follows:

"Articles entered into this 28th day of December, 1903,
between the *Security Trust & Life Insurance Company,* a
corporation of the state of Pennsylvania, of the first part, and

*Henry Ellsworth,* his administrators, executors or assigns, of the city of Chicago, state of Illinois, of the second part, witnesseth:

"Whereas, the parties hereto did, on the 6th day of January, 1903, enter into a contract by the terms of which the said party of the second part and Huber Hurd Ellsworth were appointed as agents for the party of the first part in certain territory in the states of Illinois, Wisconsin, and Indiana, in said contract described, with authority to appoint subagents throughout said territory; and whereas, in carrying out the purposes and designs of said contract, it has been necessary from time to time for the party of the second part to advance to his agents considerable sums of money; and whereas, the sums of money so advanced up to the date amount to fifteen thousand dollars; and whereas, the party of the second part demands payment of said fifteen thousand dollars; and whereas, in compliance with said demand, said party of the second part has executed his promissory note for said sum, and to secure the same has caused to be executed a mortgage upon real estate situated in Kenosha county, Wisconsin, the same having been executed by *Ada F. Ellsworth* and said party of the second part.

"Now, therefore, in consideration of one dollar, each to the other in hand paid, the receipts for which are hereby respectively acknowledged, it is agreed by the parties hereto as follows:

"(1) That the said party of the first part agrees that the said note shall be considered as a call loan, but that no call for the payment of said loan or any part thereof shall be made at any time in excess of the renewal commissions accruing from time to time to the said party of the second part and Huber Hurd Ellsworth and any other parties who are or who may be associated with them or either of them in the management of said agency.

"(2) That the said party of the second part and Huber Hurd Ellsworth, S. D. Seaman, and Edward Van Asmus, their administrators or assigns, agree that all renewals that may accrue under said contract of January 6th, 1903, and a certain other contract entered into between the *Security Trust & Life Insurance Company* and *Henry Ellsworth,* Huber Hurd Ellsworth, S. D. Seaman, and Edward Van

Asmus on the day and year first above written shall be paid to the said party of the first part in liquidation of the said note of fifteen thousand dollars referred to in this contract.

"In witness whereof the said party of the first part has caused these presents to be signed by its president and the corporate seal affixed hereto, and the party of the second part has hereunto affixed his hand the day and year first above written.

    "THE SECURITY TRUST & LIFE INSURANCE CO.,
        "By Geo. B. Luper, 2d Vice-President.
    "HENRY ELLSWORTH."

At or about the same time a new agency agreement was made between plaintiff, party of the first part, and defendant *Henry Ellsworth,* Huber Hurd Ellsworth, S. D. Seaman, and Edward Van Asmus, parties of the second part, appointing said parties of the second part agents for the purpose of canvassing for insurance on the lives of persons, with the right to appoint subordinate agents, and providing. that in consideration of the services rendered and in compensation therefor there would. be allowed said agents during the continuation of their agency and no longer certain commissions. At the same time the following agreement was executed:

"Articles of agreement entered into this 29th day of December, 1903, between the *Security Trust & Life Insurance Company,* a corporation of the state of Pennsylvania, of the first part, and *Henry Ellsworth,* Huber Hurd Ellsworth, S. D. Seaman, and Edward Van Asmus, their administrators, executors or assigns, all of the city of Chicago, state of Illinois, of the second part, witnesseth:

"Whereas, the said party of the first part did enter into a certain contract with *Henry Ellsworth* and Huber Hurd Ellsworth, two of the parties of the second part hereto, on the sixth day of January, 1903, by the terms of which the said party of the first part did appoint the said *Henry Ellsworth* and the said Huber Hurd Ellsworth its general agents for the city of Chicago and vicinity; and whereas, the said *Henry Ellsworth* and Huber Hurd Ellsworth have associated with them in said general agency—or are about to do so—the said S. D. Seaman and Edward Van Asmus, two of the parties

of the second part hereto; and whereas, the parties of the second part desire the party of the first part to make them certain advances of money during the year 1904, for the sole purpose of promoting the business of the party of the first part through said general agency:

"Therefore, in consideration of one dollar, each to the other in hand paid, the receipt of which is hereby respectively acknowledged, it is agreed by the parties hereto as follows:

"(1) That the said party of the first part shall advance to the said party of the second part certain sums of money each month during the year 1904 (unless this agreement shall cease and terminate as hereinafter provided) as follows, to wit:

| | |
|---|---:|
| On or before January 15, 1904 | $1,428 00 |
| On or before February 15, 1904 | 2,427 00 |
| On or before March 15, 1904 | 3,107 00 |
| On or before April 15, 1904 | 2,414 00 |
| On or before May 15, 1904 | 1,820 00 |
| On or before June 15, 1904 | 962 00 |
| On or before July 15, 1904 | 1,076 00 |
| On or before August 15, 1904 | 1,803 00 |
| On or before September 15, 1904 | 1,715 00 |
| On or before October 15, 1904 | 984 00 |
| On or before November 15, 1904 | 668 00 |
| On or before December 15, 1904 | 378 00 |

"(2) That said advances are to be made against the renewal commissions of the said parties of the second part or any of them jointly or severally.

"(3) That the said party of the first part specifically reserves the right to discontinue said advances at any time, provided the amount of paid-for life insurance business falls below the amount set forth as follows:

| | |
|---|---:|
| January, 1904 | $90,000 |
| February, 1904 | 111,000 |
| March, 1904 | 150,000 |
| April, 1904 | 160,000 |
| May, 1904 | 212,000 |
| June, 1904 | 289,000 |
| July, 1904 | 361,000 |
| August, 1904 | 437,000 |
| September, 1904 | 522,000 |
| October, 1904 | 608,000 |
| November, 1904 | 688,000 |
| December, 1904 | 765,000 |

"(4) That the said parties of the second part jointly and severally agree to execute an assignment of all their renewal

interest, present and prospective, to the said party of the first part to secure the payment of said advances, together with interest at the rate of five per cent. per annum.

"(5) That the said parties of the second part jointly and severally agree to execute and deliver to the said party of the first part, not later than the fifteenth of December, 1904, a note to further secure the payment of said advances in manner and form as follows, to wit:

"For value received, we jointly and severally promise to pay to the *Security Trust & Life Insurance Company* the sum of ———— dollars in such sums as may equal any and all renewal commissions that may become due under a certain contract entered into between the *Security Trust & Life Insurance Company* and *Henry Ellsworth* under date of ————, 1903, and under another certain contract entered into on the ———— day of ————, 1903, between the *Security Trust & Life Insurance Company* and *Henry Ellsworth* and Huber Hurd Ellsworth, or under any contract that may be entered into between the said company and any or either of us, and said payments to be made from month to month as said renewals may become due under said contracts.

"Witness our hands and seals this ———— day of ————, 1904.

"(Signed) ————.
————.

"(6) That the said parties of the second part jointly and severally agree to deposit with the said party of the first part negotiable securities to be approved by the party of the first part, in such an amount as will adequately secure the payment of said advances, it being understood, however, that said parties of the second part are to assume no personal responsibility for the repayment of said advances except to apply the amounts received on renewal commissions to the repayment of the same, until fully paid.

"(7) That said party of the first part agrees that said advances shall be considered as a call loan, but that no call for the payment of said loan, or any part thereof, shall be made at any time in excess of the renewal commissions, the assignment of which is herein provided for.

"(8) That the said deposit required by the sixth paragraph hereof shall be made not later than the fifteenth day of December, 1904.

"(9) That the said parties hereto bind themselves each to the other in the sum of twenty thousand dollars ($20,000) for the faithful performance of this agreement.

"In witness whereof, the said party of the first part has caused these presents to be signed by its second vice-president and its corporate seal to be affixed hereto, and the parties of the second part have hereunto affixed their hands and seals, the day and year first above written.

"GEO. B. LUPER,

"2nd Vice-President.

"HENRY ELLSWORTH.

"HUBER HURD ELLSWORTH.

"S. D. SEAMAN.

"EDWARD VAN ASMUS."

These instruments, including the note and mortgage, were all delivered at the same time. The parties of the second part continued in the performance of their duties under the agency until on or about the 11th day of October, 1904, at which time the defendant *Henry Ellsworth* and Huber Hurd Ellsworth tendered their resignation and withdrew from said agency, after which action was commenced to foreclose the mortgage.

The complaint is in the usual form for foreclosure of mortgage, alleging default in payment of the note. The answer admits the execution and delivery of the note and mortgage and sets up the contemporaneous agreement referred to as part and parcel of the note and mortgage, and that all renewal commissions accruing under the contracts of agency had been paid over and received by the plaintiff; that all commissions to accrue upon policies effected under the contracts had been assigned and made over to the plaintiff; that prior to the commencement of the action each of said agents resigned the agency. Except as therein admitted, the answer denied generally the allegations of the complaint. Defendants further counterclaimed and prayed judgment that the complaint be dismissed, and that the mortgage and record thereof be canceled and discharged.

The court found in favor of the plaintiff, and judgment of foreclosure, including order for judgment against the defendant *Henry Ellsworth* for deficiency, was rendered, from which this appeal was taken.

For the appellants there were briefs by *Winkler, Flanders, Smith, Bottum & Fawsett,* counsel, and oral argument by *F. C. Winkler* and *C. F. Fawsett.*

For the respondent there was a brief by *Kearney, Thompson & Myers,* attorneys, and *Parker & Hagan,* of counsel, and oral argument by *T. M. Kearney* and *Lewis Parker.*

KERWIN, J.  1. The material facts are substantially undisputed, and the questions involved upon this appeal are mainly questions of law.  The appellants contend that the note, mortgage, and other papers referred to in the statement of facts were all contemporaneous agreements between the same parties and in relation to the same subject matter, therefore should be taken together and considered as one instrument for the purpose of determining the character of the transaction and the intention of the makers; that the provision in the contract delivered with the note and mortgage, that "the said note shall be considered as a call loan, but that no call for the payment of said loan or any part thereof shall be made at any time in excess of the renewal commissions accruing from time to time to the said party of the second part and Huber Hurd Ellsworth and any other parties who are or who may be associated with them or either of them in the management of said agency," obligated the defendants to payment only in such manner, and therefore there could be no default upon the note until such renewal commissions had accrued and a call made therefor; that since no renewal commissions accrued and remained unpaid, there was no default and no right of foreclosure existed.  On the other hand, it is claimed that the promise to pay, in the note and mortgage, was absolute, and that the contemporaneous writing was

never executed by the parties to be charged, or upon whom the obligations which would give it mutuality were to rest; that by another contract between the parties the fund out of which payment was to be made had been diverted and applied to another purpose; and further, that by resigning their offices before any payment had been made on the indebtedness described in the note and mortgage the defendant *Henry Ellsworth* and his son voluntarily put it beyond their power to pay the debt in the manner contemplated in the writing, and thereby rendered themselves liable to pay it in the usual way.

The writings were all delivered at the same time; they related to the same subject matter between the same parties; and upon well-established principles so far as they can stand together they must be considered as one instrument. *Norton v. Kearney,* 10 Wis. 443; *Blakeslee v. Rossman,* 43 Wis. 116; *Severin v. Rueckerick,* 62 Wis. 1, 21 N. W. 789; *Herbst v. Lowe,* 65 Wis. 316, 26 N. W. 751; *Morgan v. Loomis,* 78 Wis. 594, 48 N. W. 109; *Hannig v. Mueller,* 82 Wis. 235, 52 N. W. 98; *Stapleton v. Brannan,* 102 Wis. 26, 78 N. W. 181; 4 Am. & Eng. Ency. of Law (2d ed.) 144.

It is insisted by counsel for respondent that the alleged contemporaneous writing dated December 28, 1903, and set out in the statement of facts was incomplete and not binding because not signed by Seaman and Van Asmus, hence effect should not be given to it. But an examination of this instrument will show that it was not intended to be signed by Seaman and Van Asmus; it was not an agreement to which they were parties or intended so to be. It recites on its face that it is an agreement "between the *Security Trust & Life Insurance Company,* a corporation of the state of Pennsylvania, of the first part, and *Henry Ellsworth,* his administrators, executors or assigns, . . . of the second part." It is in no way incomplete, nor does it appear that it was intended to be signed by any other party. The provision in the body

of this agreement that Seaman and Van Asmus agree that all renewals accruing under the contract of January 6, 1903, and the new agency contract of December 28, 1903, shall be paid to the party of the first part in liquidation of the note and mortgage, in legal effect amounts to a promise upon the part of *Ellsworth* that all commissions accruing under these contracts shall be turned over according to the terms of the agreement. The contract is clearly and unequivocally one between plaintiff and *Henry Ellsworth*. The question respecting the language in the second clause as to other persons not parties to the contract agreeing is not one of incomplete execution, but of construction. It is quite obvious upon the face of the instrument itself that the intention of the second party was to obligate himself that the renewal commissions under these contracts should be applied at the call of the plaintiff in liquidation of the mortgage debt.

It is further claimed that the agreement dated December 29, 1903, supersedes that of the 28th. It will be borne in mind, however, that both of these writings were executed and delivered at the same time, and obviously were intended by the parties to take effect and be considered as one instrument. We are unable to see that the provisions in the writing dated December 29th are so repugnant to the instrument dated December 28th as to show that the parties intended one should supersede the other, as contended by respondent's counsel. The provisions of these contracts may in some respects be cumulative, but not repugnant. The writing of the 28th is in effect an agreement to turn over in liquidation of the mortgage indebtedness the commissions of all parties under the agency contracts of January 6 and December 28, 1903, while the contract of December 29th provides for the turning over of commissions in payment of advances to be made in 1904. Now, while both of these writings purport to transfer the commissions and were executed and delivered together, it is quite apparent that the intention of the parties was to turn

over all commissions in liquidation of both claims, obviously
contemplating that there would be sufficient to pay the mort-
gage debt as well as the advances of 1904. Had the business
been a success, as doubtless the parties anticipated, the com-
missions evidently would have in a short time paid the mort-
gage debt as well as all advances. The writings being capable
of a construction which will suffer them to stand together,
such construction must be given them. *John O'Brien L.
Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337; *Knower v.
Emerson,* 9 Pick. 422; *Sumner v. Williams,* 8 Mass. 162;
2 Parsons, Contracts (9th ed.) 657; *Bent v. Alexander,* 15
Mo. App. 181, 189; *Belch v. Miller,* 32 Mo. App. 387, 396;
*Chicago W. & S. Co. v. Street,* 54 Ill. App. 569. Although
the note and mortgage bore date December 22d there is no
dispute but that they were delivered and took effect on the
29th day of December, contemporaneously with the other
contracts, and the evidence is undisputed that the writings
were delivered with the consent of all parties, Seaman and
Van Asmus assenting to the contract of December 28th not
signed by them, and which provided for the payment of the
mortgage indebtedness out of commissions. It further ap-
pears that long after the execution and delivery of these writ-
ings and on or about July, 1904, a dispute arose between
plaintiff and defendant *Henry Ellsworth* respecting the pay-
ment of interest upon the mortgage indebtedness, as to
whether or not it should be paid out of commissions, at which
time the general manager of the plaintiff, in a letter to de-
fendant *Henry Ellsworth,* refers to the fact that the agree-
ment makes no mention of interest, and says:

"The agreement makes no mention of interest. It was and
is merely a stipulation as to our right to 'call' the principal
or any part of it, leaving the interest to be paid as provided
for in the notes and mortgage."

The general counsel of plaintiff also in a letter to *Henry
Ellsworth* in July, 1904, speaking of his consultation with

Mr. Luper, general manager of plaintiff, respecting the mat-
ter, refers to the first paragraph of the agreement of Decem-
ber 28, 1903, and says that it does not apply to interest upon
the loan, but to the principal only.   So it seems the officers
of the company understood at this time that the agreement
was in force and that the mortgage indebtedness should be
paid in the manner provided in the agreement.   Upon the
whole record we think the agreement was that the mortgage
debt should be paid out of renewals only, and that no call
could be made for any portion of such indebtedness in excess
of the renewal commissions as specified in the agreement.

2. It is further contended by counsel for respondent that
the withdrawal from the agency of *Henry Ellsworth* and his
son put it out of their power to pay the debt as provided in the
contract, hence the debt became payable in the usual way.
This involves the question of the right of the agent to resign,
and whether or not, if such right existed, it was reasonably
exercised.   Both contracts of agency are silent as to the time
they should remain in force, and both recognize the right of
resignation by providing, "in case of the resignation or re-
moval of the said agents, the said company may, and it is
hereby authorized and empowered to, pay such subordinate
agents any commissions or other remuneration which said
agents shall have agreed to pay such subordinate agents and
to offset against all claims under this contract such commis-
sions or other remuneration so paid."   The general rule is
that, where there is no express or implied covenant to the con-
trary, the agent may resign at any time.   Mechem, Agency,
§ 233.   It is claimed, however, by counsel for respondent
that there was an implied covenant on the part of the agents
that they should not resign, and it is insisted that this cov-
enant arises not only out of the fact of the existence of the
indebtedness and the obligation to pay it, but as well out of
the agreement on the part of the debtor, implied in all such
cases, not to voluntarily put an end to the conditions upon

which his agreement is of value to the creditor.  This branch
of counsel's contention, therefore, rests upon the assumption
of implied covenant.  Conceding for the sake of argument
that the law would impose some obligation upon the agents
not to unreasonably abandon their undertaking, still such
rule must have a reasonable construction.  If the law im-
plied a covenant for the continuance of the agency, it would
not extend beyond such time as was reasonably necessary to
make an effort to successfully accomplish the purpose of the
agency.   Clearly, there was no implied covenant that the
agency should be continued indefinitely when the continuance
of it proved fruitless.  If it were otherwise, the agents might
be compelled to indefinitely continue the agency without profit
to themselves or their principal.   The doctrine of implied
covenants is in a sense an equitable doctrine, and is enforced
upon the broad principle that the law implies a covenant in
the agreement where it is clear that if the attention of the
party had been called to it he would have expressly agreed.
So it must follow that the agents here could not have intended
to agree against resignation, or that they should be compelled
to continue the agency for any particular time beyond that
reasonably necessary to give the business a fair trial.  Implied
covenants exist where equity and justice require the party to
do or refrain from doing the thing in question.   *Genet v.
D. & H. C. Co.* 136 N. Y. 593, 32 N. E. 1078; *Scrantom
v. Booth,* 29 Barb. 171, 174; *Allamon v. Albany,* 43 Barb.
33, 36; *Booth v. Cleveland R. M. Co.* 6 Hun, 591, 597; *Der-
mott v. State,* 99 N. Y. 101, 1 N. E. 242.

It appears quite clearly from the evidence that the de-
fendant *Henry Ellsworth* and his associates made a reason-
able effort to successfully conduct and build up the business.
No claim is made that they did not diligently and faithfully
perform their duties under the agency to the best of their
ability.   But it appears they were unable to make a success.

This fact they communicated to the plaintiff. It is established by the evidence that the defendant *Henry Ellsworth* and his associates did not intend to be personally responsible for the advances made in building up the business of the plaintiff, but that all such advances should be paid out of the commissions accruing from the business. It will be borne in mind that the company in the new contract of agency delivered at the same time as the note and mortgage provided for large monthly advances for 1904. The agents under the contract were expected to make a reasonable effort in the performance of their duties in building up the business; beyond this they were not expected to go. It is said by counsel for respondent that at the close of the year 1903 there was $17,000 which belonged to the company as its share of first annual premiums collected by defendant *Henry Ellsworth* and his son on policies written by them. But it also appears that defendant paid $2,000 of this, and claimed that he was entitled to $15,000 on account of advances made by him in building up the business. So upon *Ellsworth's* theory at the time of the giving of the note and mortgage he was not indebted to the plaintiff in any amount, hence the recital in the contract of December 28th to the effect that it was necessary from time to time for the party of the second part to advance to his agents considerable sums of money, and that the sums of money advanced up to date amounted to $15,000, and that the mortgage indebtedness should be considered a call loan, and that no call should be made in excess of the renewal commissions accruing from time to time to the party of the second part and Huber Hurd Ellsworth and any other parties who are or who may be associated with them or either of them in the management of said agency.

The authorities cited by respondent to the point that there was a breach of implied covenant we cannot see apply to the case before us. Here there was no implied covenant to con-

tinue, for, as said in *Genet v. D. & H. C. Co.* 136 N. Y. 593, 609, 32 N. E. 1078:

"A promise can be implied only where we may rightfully assume that it would have been made if attention had been drawn to it (*Dermott v. State,* 99 N. Y. 101, 1 N. E. 242), and that.it is to be raised only to enforce a manifest equity, or to reach a result· which the unequivocal acts of the parties indicate that they intended to effect. *King v. Leighton,* 100 N. Y. 386, 3 N. E. 594."

If we are correct in our conclusion that there was a right to resign and such right was lawfully exercised, then there was neither breach of covenant nor wrong in resigning, and hence the authorities cited by respondent's counsel do not apply. It seems clear that the defendant here intended and contracted to pay only out of commissions to be earned. Under the terms of the contract if none were earned he would be under no obligation to pay in any other manner. Having the right to resign and exercising that right reasonably, the contract was terminated and his obligation to pay extinguished. The fruits of his labor, whatever they might be, for the period of time he acted as agent of the company in endeavoring to build up the business, passed to the company upon his resignation, as well as the renewal commissions on policies written by him, since the contract of agency provided that renewals should run during the life of the policies, and that the agent should receive commissions during the continuance of his agency and no longer.

It is said that a debtor cannot voluntarily put an end to the conditions upon which his agreement is of value to the creditor. But this argument brings us back to the proposition of whether the defendant had a right under the contract to resign. If he had such right and exercised it lawfully, he was pursuing his rights under the contract and in accordance with it, and whether in so doing conditions valuable to the plaintiff were ended or not cannot affect the question.

If the right existed, the consequences flowing from the exercise of it must be borne by the plaintiff. But it cannot be said upon the record that the continuance of the agency would have been of value to the plaintiff, since if the business should not prove a success while managed by defendant, and plaintiff was obliged under the contract to advance large sums of money in carrying it on, its continuance might prove a damage and not a benefit to the plaintiff.

The finding that the agents "refused and now refuse to further perform the agency contract" is wholly unsupported by the evidence. The proof is that the defendant *Henry Ellsworth* and Huber Hurd Ellsworth, long after they had notified the plaintiff that they could not make the business a success, and on the 11th day of October, 1904, tendered their resignation in writing to take effect on or before thirty days from the date thereof; that on October 14, 1904, the vice-president of the plaintiff replied by letter to said letter of resignation asking defendant *Henry Ellsworth* to receive premiums until such time as plaintiff might be able to get a new agent and get proper notice to the policy-holders. There is no evidence whatever in the record of any objection to the resignation, nor that this resignation was wrongful or against the consent of the plaintiff. So far as the record shows it may have been in the interest of plaintiff. The agent having the right to resign, and there being no evidence to the contrary, we must presume that the right was lawfully exercised.

We conclude, therefore, that the promise upon the part of the defendant *Henry Ellsworth* to pay the mortgage indebtedness was not an absolute promise, but a promise to pay in so far as there might be renewal commissions sufficient for that purpose; that there was no covenant either expressed or implied that the agent should not resign after having made reasonable effort to successfully manage the business and failed; that the right of the defendant *Henry Ellsworth* and his son to resign was reasonably and lawfully exercised, and

that by such resignation the defendant *Henry Ellsworth* be-came discharged from his obligation upon the mortgage in-debtedness.

*By the Court.*—The judgment of the court below is re-versed, and the cause remanded with instructions to the court below to grant the relief prayed for in the defendant's coun-terclaim.