Seaman v. McNamara, 180 Wis. 609.

SEAMAN, Appellant, vs. McNAMARA, Executor, Respondent.

*January 10—June 5, 1923.*

*Bills and notes: Contemporaneous instruments: Consideration: Performance by payee: Burden of proof.*

1. A contemporaneous promissory note and a contract are to be treated as one instrument, as between the parties thereto, where they relate to the same transaction and have the same object, and by the contract it is stipulated that certain acts are to be performed by the payee and it is clear that they are the sole consideration for the note.
2. It appearing by the evidence, before plaintiff closed his case, that a note and contract offered in evidence by defendant in connection with a deposition read by plaintiff, and received during the progress of plaintiff's proof, constituted one instrument, whereby in consideration of the note plaintiff was to perform certain services, the burden was on plaintiff to prove performance; the rule, expressed in the Negotiable Instrument Law (sec. 1675—50, Stats.), that a negotiable instrument is *prima facie* issued for a consideration, not being applicable in this case.

3. Where one person agrees to render service to another for a consideration, the mutual promises in the contract are a consideration for its execution; but the one agreeing to render the service cannot recover without showing performance or a tender of performance, although one of the promises constituting the agreement is a negotiable promissory note.

4. The issue as to performance not having been litigated, apparently through inadvertence of counsel, it is the view of the majority of the court that justice requires that the plaintiff be given an opportunity to make proof thereon, and a new trial is therefore granted. JONES and CROWNHART, JJ., dissent.

ESCHWEILER, J., dissents in part.

APPEAL from a judgment of the circuit court for St. Croix county: GEORGE THOMPSON, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Varnum & Kirk* of Hudson, and oral argument by *N. O. Varnum.*

For the respondent there was a brief by *McNally & Doar* of New Richmond, and oral argument by *W. T. Doar.*

The following opinions were filed April 3, 1923:

JONES, J.   Plaintiff filed a claim in county court against the estate of Thomas Lee.   On objection by defendant and demand for a jury trial the cause was transferred to the circuit court.

The action is on a promissory note for $1,750 made by defendant's testate, payable to plaintiff or order sixty days after date, with interest at eight per cent.   The note, Exhibit B, provided that a reasonable attorney fee should be paid if it was not paid when due, and that if proceedings should be commenced for its collection the fee should be taxed with the costs, and consent was given that a justice of the peace might have jurisdiction to the amount of $300.

The objections of the executor to the allowance of the claim are set forth in the answer and are as follows: That the note was made pursuant to a contract under which plaintiff agreed to treat deceased for and cure him of cancer; that the maker of the note later died and plaintiff failed to

perform the contract; and that plaintiff at the time of the making of the contract was paid $250, a sum which was the fair and reasonable value of the services rendered.

It appeared that the defendant's testate, Lee, was a resident of Deer Park, Wisconsin; that he went to the sanitarium of plaintiff at Cherokee, Iowa, for treatment for cancer in the early part of July, 1920; and that he died there in the following September.

The note in question was made July 6, 1920. On the same date the following contract was made:

"Cherokee, Iowa, July 6, 1920.

"This article of agreement, made and entered into this above date between *Dr. R. C. Seaman*, resident of Cherokee, Cherokee county, Iowa, party of the first part, and Mr. Thomas B. Lee, resident of Deer Park, county of St. Croix, state of Wisconsin, party of the second party,

"Witnesseth: First party, by these presents, agrees to treat cancerous growth in submaxilla gland and lower lip of Thomas B. Lee, and try his very best to effect a permanent cure of same by this first treatment. If party under treatment ever needs re-treatment, first party will re-treat same as many times as necessary for this one price—providing party under treatment will return to the sanitarium as soon as they know it is necessary. Party under treatment, by these presents, agrees to comply to directions and rules of first party's treatment and sanitarium.

"Second party promises to pay first party $2,000 cash for the above mentioned treatment as follows, to wit: $250 in advance, the receipt being hereby acknowledged, and $1,750 on or before leaving sanitarium, cash or note, and going price per week, weekly in advance for room and board while at the sanitarium, and $5 for every four bottles of blood purifier used by him after leaving the sanitarium.

"Dr. R. C. Seaman, first party.
"Thos. B. Lee, second party."

The trial court found as a fact, among others:

"That the plaintiff is a physician who operates a sanitarium at Cherokee, Iowa, but that the evidence does not show that the plaintiff has been licensed to practice as a

physician under the laws of said state or any other state, and that the evidence also fails to disclose that the plaintiff has rendered any service under his said contract with Thomas B. Lee."

Judgment was entered dismissing the claim.

At the trial proof was given as to the signature of the note and it was offered in evidence. A motion was made for a nonsuit, and plaintiff asked leave to reopen the case and leave was granted. The plaintiff, *R. C. Seaman*, was then called and testified as to the possession of the note and that he was the holder. The deposition of D. A. Seaman was then offered by the plaintiff and the witness was interrogated with reference to Exhibit A, in which he stated that he was present at the time of the signing of that contract; that the plaintiff made no other representations regarding the case of cancer than were contained in the contract. The witness testified in the same deposition that Exhibit B was signed on July 6th and at about the same time that Exhibit A was signed; and that it was signed after Exhibit A; and that no other person was present when Exhibit A and Exhibit B were signed.

The defendant's counsel then read from the deposition to the same effect as the testimony above, and made an offer which appears in the bill of exceptions as follows: "Offer in evidence Exhibit A attached to complaint in connection with deposition." "Received." The plaintiff then rested his case and the defendant rested. Both parties moved for a directed verdict.

This statement of the course of the procedure is made because there seems to be some confusion as to the exhibits. Exhibit B was the note, and a copy of the note attached to the complaint is marked Exhibit A, and the contract attached to the deposition is also marked Exhibit A.

There is no doubt, however, that both the note and the contract were offered in evidence. They are both included in the bill of exceptions and in the printed case prepared by

appellant, and the court found that the parties had entered into a contract in writing which had been received in evidence and marked Exhibit A, and stated in the findings the substance of the contract. No exception was taken to this finding.

Many years ago Mr. Chief Justice DIXON, speaking for this court, thus stated the familiar rule which has often been declared by this court:

"There is no rule better established than that all contemporaneous agreements between the same parties, and in relation to the same subject matter, are to be taken together and construed as one instrument for the purpose of determining the character of the transaction, and the intention of the makers." *Norton v. Kearney,* 10 Wis. 443, 448.

The rule has often been applied when one of the contemporaneous documents was a negotiable promissory note and where the controversy arose between the parties to the agreement. In *Elmore v. Hoffman,* 6 Wis. 68, a note and another contract relating to the same subject matter were executed at the same time. In an opinion by Mr. Justice COLE it was held that the other writing was admissible to qualify or limit the liability, or vary the terms and conditions of the note, and that the same rule holds as to an indorsee taking the note after maturity or with knowledge of the equities; that the "note and contract must be read in connection, as really forming one contract." In *Herbst v. Lowe,* 65 Wis. 316, 320, 26 N. W. 751, it was said by Mr. Justice CASSODAY: "The deed, bond, notes, and mortgage, having all been executed and delivered at the same time, must be taken together and construed as one instrument, for the purpose of determining the character of the transaction and the intention of the parties."

*Thorp v. Mindeman,* 123 Wis. 149, 101 N. W. 417, is one of the cases cited by respondent's counsel. This was an action to foreclose a mortgage. The main question was whether the note should be considered as negotiable in the

hands of an innocent purchaser. The mortgage contained the usual covenants requiring the mortgagor to pay taxes, keep the property insured, and the like. Mr. Chief Justice WINSLOW discussed the general subject at some length, holding that agreements of the mortgagor, being simply those for the preservation of the security and not intended or fitted to qualify or affect in any way the absolute promises, did not enter into the note or affect its negotiability. This decision is quite consistent with those already cited; and the rule of the earlier cases was again stated by Mr. Justice KERWIN in a later case as follows:

"The writings were all delivered at the same time; they related to the same subject matter between the same parties; and upon well-established principles, so far as they can stand together they must be considered as one instrument." *Security T. & L. Ins. Co. v. Ellsworth,* 129 Wis. 349, 358, 109 N. W. 125.

In other jurisdictions it has been said that the note and other writing "may be construed as one paper" (*Rogers v. Smith,* 47 N. Y. 324, 327); that the note and contract are to be construed together as an entire contract, the stipulations of which are mutual and dependent rather than independent and collateral (*American G. & V. M. Co. v. Wood,* 90 Me. 516, 38 Atl. 548). In speaking of a note it was said in *Hill v. Huntress,* 43 N. H. 480, 483:

"As between the original parties, notwithstanding its form, this instrument is but one part of a special contract, the other part of which, as it was made, was contained in the written agreement of the same date, and purporting to be executed at the same time. Different instruments are to be construed together, as parts of the same contract, where it is necessary to carry into effect the agreement and intention of the parties."

In *Myrick v. Purcell,* 95 Minn. 133, 134, 103 N. W. 902, the court said:

"Instruments executed at the same time, for the same purpose, and in the course of the same transaction, are, in the

eye of the law, one instrument, and will be read and construed together, as if they were as much one in form as they are in substance. . . . This principle is applied to cases where negotiable instruments and a written agreement are executed at the same time by the same parties. The resulting contract is to be determined by a construction of both in accordance with conventional rules. . . . If, as a result of such construction, the bill or note is payable out of funds to be raised or collected, liability thereon does not attach until the funds have been raised." Many cases are cited in the opinion.

In *Sutton v. Beckwith,* 68 Mich. 303, 36 N. W. 79, a note and contract were executed at the same time. By the contract the payee agreed to make certain sales for the benefit of the maker. The court said (p. 310):

"These two papers, so executed, must be taken and construed together. They formed one contract, and, between the original parties to the note, could not be enforced until the agreement was performed. It has been well settled, in this state and elsewhere, that several instruments made at one and the same time, and having relation to the same subject matter, must be taken to be parts of one transaction, and construed together for the purpose of showing the true contract between the parties."

Innumerable cases might be cited to the rule as applied to written agreements generally. We have cited and quoted from a few of the many cases dealing with negotiable promissory notes and contemporaneous agreements because appellant's counsel insist that the rule does not apply where one of the writings is a negotiable note, and that the contract in such cases does not qualify or limit the obligation expressed in the note; that although the two writings may be construed together if the meaning is doubtful, they cannot be regarded as one instrument.

We consider that where the note and contract are made and delivered at the same time, relate to the same transaction, and have the same object, and by the contract it is stipulated that certain acts are to be performed by the payee,

and it is clear that they are the sole consideration for the note, the two writings are to be treated as one instrument, as between the parties thereto.

In the instant case there is no doubt that the contract and note were signed at the same time; the contract was first signed, and this was at once followed by the execution of the note. There is no doubt that they both related to the same transaction, that is, the undertaking by the plaintiff to treat Thomas Lee for a malignant disease.

It is argued by appellant's counsel that, notwithstanding the rule that the two writings should be construed as one instrument, the burden was on the defendant to prove the failure of consideration and the nonperformance of the contract by the plaintiff, and the familiar rule is invoked as expressed in the Negotiable Instrument Law:

"Section 1675—50. Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

It is doubtless the ordinary rule that where an action is brought on a promissory note and a defense is pleaded, the burden rests upon the defendant to prove his defense. If in this case the plaintiff had seen fit to make proper proof of the execution and delivery of the note and had offered it in evidence and rested his case, we would have a different situation presented.

As already stated, plaintiff not only placed the note in evidence but proceeded to offer testimony with respect to the contract, the signatures, and the time of its execution. Very properly, under these circumstances, the defendant's counsel during the plaintiff's case offered the contract in evidence and it was received without objection. It was thus established before the plaintiff closed his case what the real transaction was, namely, an agreement on the part of the plaintiff to render professional service and on the part of the defendant to pay therefor.

It is quite immaterial that the contract was offered in evidence by defendant's counsel during the progress of the plaintiff's proof. Being properly in evidence it became a part of the plaintiff's case. *Tietz v. Tietz,* 90 Wis. 66, 62 N. W. 939. As said by this court:

"The material question for consideration by the court at the time the motion for nonsuit was made was whether or not, upon all the evidence before the court at that time, any case had been made by the plaintiff." *Mahar v. Montello G. Co.* 146 Wis. 46, 51, 130 N. W. 949.

It is every-day practice for trial courts to grant a nonsuit or directed verdict on the close of the plaintiff's testimony when, on all the evidence then properly submitted by either party, no cause of action has been proven. When the trial court was called upon to decide the motion the situation presented was that although in form there were two writings there was in fact one agreement, the substance of which has been already stated.

The provisions were mutual and dependent. Manifestly it would be grossly unjust under the circumstances that plaintiff should be paid $1,750 in addition to the $250 already received, without some proof of performance on his part. No one would question that if A. in a written agreement agrees to render service for B. for a consideration to be paid by B. it would be necessary for A. to make some proof of performance as a condition of recovery. The mutual promises in the contract would be a consideration for its execution, but the question of performance is also material, and A. would not be entitled to a judgment on the mere proof of the agreement.

"It is a general rule of law that a contract must be performed according to the terms of the agreement before a party can have any right of action." 6 Ruling Case Law, 951.

The rule is thus stated in 13 Corp. Jur. 627:

"Where promises which form the consideration for each other are concurrent or dependent, the failure of one party

to perform will discharge the other, and one cannot maintain an action against the other without showing performance, or a tender of performance, on his part. . . ."

It is evident that the treatment was to begin at once, while compensation was not payable for sixty days. It is a singular feature of the case that there is not a scintilla of evidence that the plaintiff or any one in his behalf ever rendered the slightest service in treating the deceased. It does appear that Lee died at the sanitarium fifty-eight days after the agreement was made and two days before the payment became due.

The cases already cited illustrate that performance by the plaintiff is a condition of recovery although one of the promises constituting the agreement is a negotiable promissory note. Other cases are *Naftzger v. Gregg* (Cal.) 31 Pac. 612; *Kelly v. Webb,* 27 Tex. 368; *Mix v. Ellsworth,* 5 Ind. 517; *Hunt v. Livermore,* 5 Pick. 395.

In our opinion the two writings constituted, in the language of the opinions, one instrument as between the parties; and since this fact appeared from the evidence before the plaintiff rested his case, it was incumbent on him to prove performance of the contract on his part.

But apparently through inadvertence of counsel this issue was not litigated, and no proof was offered by plaintiff of performance on his part. It is the view of the majority of the court that justice requires that the plaintiff should be given an opportunity to make such proof, although the writer does not concur in that opinion. It follows that a new trial should be granted.

*By the Court.*—Judgment reversed, with instructions to grant a new trial.

ESCHWEILER, J., dissents in part.

CROWNHART, J. (*dissenting*). I agree with Mr. Justice JONES that the judgment of the circuit court should be af-

firmed. Let us briefly state the facts: The plaintiff filed a claim against the estate of Thomas B. Lee, deceased, consisting of a note of said Lee to plaintiff for $1,750, balance for board $3, and $1.50 for three shaves, total $1,754.50, whereupon defendant filed objections to said claim setting up, in substance, that said Lee died at Cherokee, Iowa, on the 2d day of September, 1920, from the effects of a cancer; that on the 5th of July, 1920, he consulted the Mayo Clinic at Rochester, Minnesota, and was advised that there was no hope of recovery; that on the next day he went to Cherokee, where he met the plaintiff, who represented to said Lee that he could cure him of the cancer; that thereupon the plaintiff signed a treatment contract and the note in question; that the plaintiff failed to perform his contract in accordance with its terms, and that Lee paid the plaintiff $250 in cash at the time he entered into the contract. The defendant thereupon asked that the claim be disallowed.

The case came to trial in the circuit court before a court and a jury upon the claim and the objections thereto. The plaintiff introduced in evidence the note in question, computed the interest thereon, and rested his case. The defendant thereupon moved for a nonsuit, and the plaintiff asked leave to reopen his case, which was granted. The plaintiff was called as a witness and testified to the effect that he was the owner of the note and that it had been in his possession since the signing, and to further prove his case he introduced the deposition of one D. A. Seaman, who was "getting out literature for *Dr. Seaman*" at the time, showing that he was present at the execution of the note and treatment contract and saw them signed, the treatment contract being identified as Exhibit A and the note as Exhibit B. Exhibit A, the treatment contract, was first signed, and then Exhibit B, the note, was signed by Lee. No one was present but the plaintiff, *Dr. Seaman,* and the witness D. A. Seaman. The defendant then read from the deposition of D. A. Seaman to the effect that the treatment contract

was signed; then the note was signed immediately following the contract, and thereupon defendant offered in evidence Exhibit A, being the treatment contract, which was received without objection.

Then both parties rested and moved the court for a directed verdict. The jury was discharged and the court made its findings of fact and conclusions of law, dismissed the case, and entered judgment for the defendant. The plaintiff appealed.

This court now holds that the decision of the lower court was correct and without error, on the case as made before it, but reverses the case and sends it back for a new trial pursuant to sec. 2405m, Stats., which provides that this court may, "when it is probable that justice has for any reason miscarried," or if it "shall be deemed necessary to accomplish the ends of justice," grant a new trial in its discretion, even though there are no errors in the record and the judgment should be otherwise affirmed. The statute lays down a rule of equity to soften the rigors of the law.

Now we come to the question whether or not, from a fair consideration of the facts in the case, "it is probable that justice has for any reason miscarried" or a new trial should be "deemed necessary to accomplish the ends of justice." I cannot bring myself to believe that this is a case where the conscience of this court should be moved to favor the plaintiff by granting a new trial. I can see no inadvertence of the plaintiff in the trial, but, on the contrary, it is perfectly plain to me that the plaintiff deliberately chose his ground for his contest in the court below. He sought to prove his case by the introduction of the note alone, and to rest upon the presumption of consideration. He stood upon his bond. He was a "stony adversary." He craved the law. He pleaded not for equity or justice. He endeavored to disregard the treatment contract as immaterial, and, it would seem, with good reason. The treatment contract on its face shows that it is unconscionable and extortionate. It is such

a contract as no reputable physician would be likely to make under the circumstances. It is set forth in full in the opinion of the court.

Here is a man sick unto death, who applies to a doctor for treatment, probably as a result of the work of D. A. Seaman in "getting out literature for *Dr. Seaman.*" On the face of the contract it appears that the sick man had a cancerous growth of the lower lip reaching into the sub-maxilla gland, and the plaintiff was to do "his very best to effect a permanent cure of same *by this first treatment.*" Here is a fairly implied representation that the plaintiff would probably cure the deceased man by a single treatment. However, it is represented to him that if he needs re-treatment he may have it as many times as necessary for the one price ($2,000), providing the party will return to the sanitarium and comply with all the rules, including paying the going price per week, weekly in advance, for board and room, which price is not given in the contract, and that the patient shall pay "$5 for every four bottles of blood purifier used by him after leaving the sanitarium." In the absence of any testimony of the doctor showing what treatment he gave this man, the doctor being present at the trial, it may fairly be presumed from the contract that he treated him with his "blood purifier." The note which he took from his patient bears interest at eight per cent., and provides that, in case of proceedings for collection, attorneys' fees shall be allowed. A hard contract, indeed!

What happened? The sinking man, grasping at straws, signed the note and contract, stayed on at the sanitarium less than two months, and died. It seems to me too plain to admit of controversy that the plaintiff took advantage of his patient's unfortunate condition to make an unconscionable and overreaching contract. A doctor stands in a fiduciary or confidential relation to his patient, and this court need exercise no undue sympathy with one who dishonors a noble profession by oppression and extortion. It

seems to me to be a perversion of the statute to grant a new trial in this case on the ground stated in the statute that "it is probable that justice has for any reason miscarried," or "to accomplish the ends of justice." It gives the plaintiff who comes into the court with unclean hands another chance to mulct the estate of his victim. The statute was not intended for any such purpose. It was intended to reach 'those cases which appeal to the conscience of this court as being cases where justice has not been done and hence requires a new trial in equity and good conscience. It must be noted that one party to this contract is dead. His mouth is closed. He may not disclose on the trial what happened at the making of this extraordinary contract. Only the two Seamans are witnesses to testify. Further, I think it sufficiently appears that the deceased had a manifestly incurable disease at the time he came to *Dr. Seaman*. I think the contract carries with it a clear implication that the deceased, for a consideration of $2,000, would be cured. Such a contract is against the public policy of our laws and should not be enforced in our courts. Sec. 1436*f*, Stats.

For the above reasons I respectfully dissent from the decision of the court.

A motion for a rehearing was denied, without costs, on June 5, 1923.